### THE MARSEILLES LAND AND WATER-POWER COMPANY

#### *v.*

### LORIN ALDRICH.

1. CONTRACT — *of the interest acquired in purchase, whether title or share in stock.* A party purchased an undivided one-fifth in certain property, consisting of real estate, water-power, and personalty, under a written contract with the owners of the other undivided interests, to form at once a special partnership to improve the same, which partnership should be treated as a corporation from that date, owning all the property of the several owners, and, until a regular organization could be effected under a charter to be procured, the business was to be managed by a board of directors consisting of five members, to be controlled by a majority voce of the directors in the same manner as if a real corporation was organized, and each owner was to unite with the others in organizing a regular corporation under the charter when procured, each taking stock in proportion to his interest in the assets of the special partnership, and such corporation, when formed, was to become the owner of the assets of the special partnership and assume all its liabilities: *Held,* that under such agreement the purchaser did not acquire, either legally or equitably, any title to the undivided one-fifth part of the property, but only an equitable right to stock in the company formed, the legal title thereto to be consummated when the corporation should be organized and the stock issued, and that neither he, nor a purchaser from him, could enforce a partition.

2. CORPORATION — *right of secretary to subscribe stock to, for parties agreeing to organize.* Where the owners of undivided property agreed among themselves to form, immediately, a special partnership to improve the same until a charter could be procured and an organization made thereunder, when the property was to be conveyed to such corporation, and each owner was to take stock in proportion in the property thus to be conveyed, it was *held,* that upon the formation of the contemplated corporation, and a conveyance of the legal title to it, the secretary of the association was authorized to subscribe the name of an owner of an interest to the stock of such corporation at the time it was organized.

3. SAME — *right to assess party as to stock owned before subscription.* Where several parties owning undivided interests in real estate, upon which there is a valuable water-power, enter into a written agreement to form at once a special

partnership to improve and develop the property, until an organization can be effected under a charter when procured, each party agreeing to furnish his proportion of the funds necessary for the immediate building of a dam across the Illinois river, etc., to prepare the water-power for the use of a cotton mill, the stock of each owner will be held, in equity, both before and after the organization of the corporation, subject to reasonable assessments for the objects contemplated.

4. Same—*right to sell real estate.* Where the owners of real estate, upon which is a water-power, organize themselves into a corporation to improve and develop the water-power by the construction of a dam, canal, etc., and the establishment of a cotton mill, putting such property in the corporation, the corporation will have the lawful authority to sell and convey a portion of the real estate, and invest the proceeds in other property.

5. Same—*equity will restrain abuses by corporation.* If a corporation diverts, or attempts to divert, its funds for purposes outside of the object of its organization, the stockholders, or owners entitled to stock, may have such abuses restrained in a court of equity,

6. Same—*remedy for wrongful sale of party's stock.* If a corporation unwarrantably disposes of a shareholder's stock, it may be that it will be liable to such shareholder for the value of the stock at the time of its sale, or for the money received by its sale.

7. Where the owners of property sell and dispose of an undivided fifth part thereof for certain machinery, and they and the purchaser organize a corporation for the improvement and development of the joint property, the corporation so formed can have no interest in the question as to what disposition was made of the machinery. It can have no connection with the business of the corporation.

8. Abstracts—*when costs of printing are refused.* When an abstract is so imperfect and inartistically drawn as to give the court but little aid in examining the record, no costs will be allowed the appellant for making or printing the same.

Appeal from the Circuit Court of LaSalle County; the Hon. Edwin S. Leland, Judge, presiding.

Before and on June 19, 1866, Underhill, Clark, and Young, residents of Illinois, had purchased and were the owners of a large amount of real estate, lying on each side of the Illinois river at Marseilles, and a valuable water-power on the Illinois river at that point. They were also the owners of a considerable amount of personal property which they had accumulated with a view of the improvement of the water-power and the enhancement of the value of the real estate for the purposes of use and speculation.

On the 19th and 20th of June, 1866, these three men entered into written contracts with Warren Aldrich, of Lowell, Massachusetts, Daniel Hurd, of Chicago, Joseph A. Brabrook, of Massachusetts, and Joseph F. Brabrook, of Chicago, by which Underhill, Clark and Young sold to Warren Aldrich one undivided fifth part of their real estate, water-power, and personal property in question, and to Daniel Hurd, Joseph A. Brabrook and Joseph F. Brabrook another undivided one-fifth part of this real estate, water-power, and personal property. Warren Aldrich paid for his interest in second-hand cotton machinery, estimated at $8,000, situated at Lowell, Massachusetts. Hurd and the Brabrooks undertook to pay for their one-fifth in cash, half to be paid in thirty days, and the balance on June 15, 1867, with interest at six per cent. The price of each one-fifth was, by contract, placed at $8,000. Of the one-fifth so purchased by Hurd and the Brabrooks, Hurd was to take and pay for one-half, and each of the Brabrooks one-quarter of that undivided fifth.

These parties also agreed at the same time to form themselves into a partnership in the nature of a stock company, to be called the " Marseilles Land and Water-Power Company," for the purpose of improving the water-power and land above mentioned, to last until an act of incorporation could be obtained from the State of Illinois, and then to organize a corporation to which all this property should be conveyed, and in which each of the parties should take stock in proportion to his interest in the property thus to be conveyed. By their contract the business of the intended corporation was to be conducted in the meantime by them as a special partnership, each exercising the same control over the business of this partnership which he would have had the power to exercise over the business of the corporation had it been already formed, and by the agreement of the parties the corporation was to succeed to all the rights of this special partnership in the property. Among other things it was agreed that each one

of the parties should furnish his proportion of the funds necessary for the immediate building of a dam across the Illinois river, and put in the guard locks, and excavate a canal, and otherwise prepare the water-power for the use of a cotton mill that was expected to be constructed by the association. Each of them promised the others that as far as possible he would pay his part for the purchase from Warren Aldrich of 100 looms and appurtenances for the manufacture of cotton goods, to be put in operation on the premises, as soon as practicable, for the improvement of the estate. It was understood that the Brabrooks and Hurd should have one vote in the control of the business, and each of the other four parties should have one vote. It was further provided that no debts should be contracted without the consent of the majority of the five separate interests thus represented, and each reciprocally bound himself to the other that in case he desired to sell his undivided interest he would offer the same to the others, according to their interests, at the market value ; and if they did not choose to purchase, the party desiring to sell should then have the privilege of selling to any other party.

This private association was immediately organized, the books were opened, and business commenced. Some of the real estate was sold, money was expended in the construction of a dam, some contributions were made towards the building of a bridge, contributions were made for the improvement of roads, and from time to time each party was called upon by the association for contributions of money, in proportion to the interest held by each, and from time to time such contributions and assessments were paid, so that before February 1, 1867, Warren Aldrich had thus contributed in money the amount of about \$1,600.

On February 5, 1867, Warren Aldrich, having offered to sell out his interest to his associates, and failing to agree with them, sold and transferred his interest to Lorin Aldrich, the complainant in this suit ; of which the other members

of the association being advised, a correspondence was begun with Lorin Aldrich.

The charter for the corporation having passed March 9, 1867, on April 2d the corporation was duly organized in pursuance of the original agreement, and Underhill, Clark and Young conveyed all of the property (one-fifth of which had been sold to Warren Aldrich) to the corporation. The corporation was organized with the nominal capital of $500,000. The land was received by the corporation as a payment of twenty-five per cent upon the stock, and credited to the respective shareholders at the estimated value of $125,000. All the other parties took an active part in the organization of this corporation except Warren Aldrich and Lorin Aldrich; neither of them was present. Each of the others subscribed for his share of the stock and one-fifth of the stock, nominally $100,000 (with twenty-five per cent paid upon it), remained upon the books of the company apparently undisposed of, and was treated by the parties — by stockholders and officers of the corporation — as the stock to which Warren Aldrich, or his assignee, Lorin Aldrich, was entitled by reason of his undivided interest in the property which had been conveyed to the corporation. Assessments were made upon all the shares of the stock for the further improvement of the property, and the Aldrichs were urged to attend to their contributions and pay their assessments, but failing to do it, under some by-law of the corporation an attempt was made to dispose of this stock, and it was sold, as it is said, for about $6,000, or $6,500.

Lorin Aldrich brings this bill, assuming that neither Warren Aldrich nor himself ever became a member of this corporation, and claims that Warren Aldrich, by his original purchase of June 19, 1867, acquired an absolute title to the one undivided fifth of all the property which was subsequently conveyed to the corporation; and that the corporation paid nothing for this property when it was conveyed to it by Underhill, Clark and Young, but took it with the

full knowledge of the supposed rights of Warren Aldrich, and that the corporation is bound to account to the complainant for the value of this property. He charges " that although complainant owns no stock in said company he owns one-fifth of all the assets taken and forming the capital stock," and charges that the " same was taken for such purposes without the knowledge and consent of complainant, and with the full knowledge of the company," and he claims " one-fifth of the assets unimpaired by the liabilities of the company."

The prayer of the bill is, in substance, that complainant's interest in the property and water privilege may be declared, and that proper conveyance be ordered to be made to complainant. He asks for an account, and that the amount due complainant be declared a lien upon the residue of the property of the company. He asks that his interest " may be set off in severalty," and for general relief.

The corporation and the several parties to the original contract are respectively made parties defendant; answers were filed and proofs taken.

In the answers the corporation and the other holders of the stock offer to furnish to the complainant one-fifth of the stock of the corporation upon condition that he will contribute his share or proportion of assessments which have been assessed upon the stock and paid by the other stockholders.

The court, upon final hearing, seems to recognize as correct the views of the complainant as to his rights. No account was taken or ordered to be taken. But the court decided, among other things, " that said Marseilles Land and Water Company ought in equity to pay complainant for his interest in said property sold by said Clark, Underhill and Young to said Warren Aldrich on the said 19th day of June, 1866, the sum of $14,192; and the court also finds that the complainant had stored in Massachusetts, for Underhill, Clark and Young, the machinery which was paid to them by Warren Aldrich for this one-fifth of

the property, and that a reasonab.e compensation for such storage was $400 ; and the court decrees that the corporation ought to pay to Lorin Aldrich, for the storing of such machinery, the further sum of $400."

Mr. CHARLES BLANCHARD, for the appellant.

Mr. E. F. BULL, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This decree must be reversed. By the contracts made upon the 19th and 20th of June, 1866, between these parties, as they were evidently understood by the parties themselves, and as they were subsequently construed by the parties, as appears from their actions, it is evident that Warren Aldrich never acquired, either equitably or legally, an absolute title to one undivided fifth of the real estate, water-power, and personal property mentioned in this purchase. Had Aldrich demanded it the next day, having completed his payments therefor, he could not have enforced a partition of the property, nor have properly demanded to have his share set apart to himself separately. This would have been a violation of their contracts. What he did acquire in substance by these contracts was a title to one-fifth of the stock of the joint stock company which they agreed to form. His legal title to that stock was to be consummated when the corporation should be organized and the stock issued. In the meantime, by their contract, he was equitably entitled to be treated as a stockholder, and the owners of the respective shares, from the very nature of the transaction, were dealing with each other upon the same terms and under the same relations precisely, between the time of the making of these contracts and the formation of the corporation, as they would have done had the corporation been organized upon June 19, 1866. Such was the spirit of their contract, and neither party had the right, of his own volition, to terminate that

relation and close out the business any more than a stockholder in a corporation has a right to terminate that relation and put the corporation into liquidation upon his mere will. True, each party had a right to sell out his interest if he could find a purchaser, but the purchaser would take the interest subject to the same limitations and restraints under which the original owner held it.

It was plainly the intention of these parties — by these contracts of June 19th and 20th — to form at once a special partnership, which should be treated as a corporation from that date, and as a corporation owning all the property of which Aldrich bought one-fifth ; and that the parties should be regarded in their dealings with each other and in the management of this property as equitable stockholders in such *quasi* corporation or special partnership ; and that, until a regular organization should be effected under a charter which was to be procured, the business was to be managed by a board of directors, consisting of five members — that is to say, Clark, Underhill, Young and Aldrich were each to have the voice of one director, and the Brabrooks and Hurd united should have a voice of one director ; and the business was to be controlled by a majority vote of these directors, in the same manner as if a real legal corporation were organized ; and, by their agreement, each of them was to unite with the others in organizing a regular corporation under the charter when procured — each taking stock in proportion to his interest in the assets of this special partnership, and the regular corporation, when organized, was to become the owner of all the assets of this special partnership, and to assume all its liabilities.

In substance, the execution of these contracts authorized the secretary of the association to subscribe the name of Warren Aldrich or Lorin Aldrich to the stock of this corporation at the time it was organized. True, by such subscription no additional personal liability could have been imposed upon the subscriber, but his stock was held, in equity, both before and after the organization of the corpo-

ration, subject to reasonable assessments for the building of the dam and the development of the property. A court of equity dealing with the relations between these parties and with the relations between each of these parties and this corporation must follow the substance and spirit of these original contracts and adjust their relative rights and liabilities on the same basis as if the regular corporation had been organized June 20, A. D. 1866, and each of the parties, embracing Warren Aldrich, had then subscribed for and received his proper share of stock. The sale to Lorin Aldrich was in effect a sale of Warren Aldrich's stock — no more, no less.

Complaint is made that the complainant's share of the proceeds of real estate sold was mixed with the proceeds belonging to the corporation and invested in other property so that it could not be separated. From the very nature of the transaction this was intended to be done, and the corporation had lawful authority to do so.

It is complained that the books of the corporation were not properly kept. Lorin Aldrich and Warren Aldrich held one-fifth of the stock, had a voice in the control and management of this business, and it was as much their duty as stockholders to see that these books were correctly kept as it was the duty of any other stockholders.

It is complained that the funds of the corporation have been diverted for purposes outside of the object of the organization. If so, as stockholders or owners entitled to stock, the Aldrichs had a right, at any time, to enter a court of equity for the purpose of restraining such abuses. If the corporation has unwarrantably disposed of this Aldrich stock so as to sever their relations with the Aldrichs as stockholders, it may be that the corporation is accountable to the Aldrichs for the value of the stock at the time it was sold, or for the money received for the stock when it was sold ; but these matters are not investigated in the case. No account was taken as to whether the business had been profitable or unprofitable, whether the assets of the corpo-

ration had increased in value or decreased in value. The court below seems to have assumed that, by the appropriation by the corporation of the property which was sold by Underhill, Clark and Young to Aldrichs, the corporation thereby became liable to the owner of Aldrich's share for his share of the property as though it had been misappropriated. This results from the misconception of the relation established between these parties by their original contracts.

It is not perceived how the question as to what disposition was made of the machinery which Aldrich sold to Underhill, Clark and Young can be introduced into this controversy at all. The corporation has no interest in that question, nor has any other member of the association. That is a matter resting between Warren Aldrich and Underhill, Clark and Young, and can have no connection with the business of the corporation.

The decree must be reversed and cause remanded, with directions to permit complainant to amend his bill, and to allow amendments to the other pleadings, if necessary, and for another hearing.

The abstract in this case is so imperfect and inartistically prepared that it has given the court but little aid in the examination of the record. No costs will, therefore, be allowed to appellant for making or printing the abstract.

*Decree reversed.*