# Knox *v.* Childersburg Land Company.

*Bill in Equity for Specific Performance of Agreement to Convey Lands.*

1. *Statute of frauds, as to contracts for sale of lands; contracts of married women; averments of bill.*—In a bill which seeks the specific execution of a contract relating to lands, it is not necessary to aver that the contract was reduced to writing, as required by the statute of frauds (Code, § 1732); but, when the specific execution of such a contract is sought against a married woman, who is not clothed with unlimited power to contract (Code, §§ 2346-48), the bill must affirmatively show a compliance with the statutory requirements on her part.

2. *Executory contract of married woman.*—Under the statutory provisions now of force (Code, §§ 2346-48). an agreement for the sale or purchase of land by a married woman, in writing, with the assent and concurrence of her husband, also expressed in writing, is valid and binding to the same extent as if she were sole, and is enforceable by all the remedies applicable to persons *sui juris.*

3. *Agreement to take shares in future corporation.*—An agreement to take shares in a corporation to be afterwards formed, while it may be a binding contract, for the breach of which an action would lie, is not a completed contract of subscription; and if the corporation is not organized within a reasonable time, or if there is a material departure from its original character or purpose, or if the law is in the meantime so changed that the objects of the agreement can not be carried into effect, its binding obligation is destroyed, and a court of equity will not enforce it.

4. *Same; subscriptions payable in money or stock.*—By the statute now of force, subscriptions to the capital stock of a corporation organized for industrial or business purposes "must be payable in money," though the subscriber may be allowed the privilege of discharging it in property or the performance of labor and services (Code, § 1662), while the former statute allowed them to be made "payable in money, or in labor or property at its money value" (Code, 1876, § 1805); and this material change in the law prevents the specific execution of an agreement to subscribe by conveying land to a corporation to be afterwards formed, and which was not formed until the present law became operative.

Appeal from the Chancery Court of Talladega.

Heard before the Hon. S. K. McSpadden.

The bill in this case was filed on the 7th July, 1888, by the Childersburg Land Company, a private corporation organized under the general statutes, against Mrs. Amanda J. Knox and William E. Knox, her husband; and sought to compel the specific execution of an agreement on the part of the defendants, with several other persons, each to convey certain lands, particularly described, to one R C. Carter, as

[Knox v. Childersburg Land Company.]

trustee, for the use, benefit and purposes of said corporation when formed. It was alleged that the agreement was entered into on the 21st May, 1887, and that the corporation was organized on the 23d January, 1888. The bill stated the stipulations of the agreement, the substance of which is set out in the opinion of the court, but did not aver that it was reduced to writing. The defendants demurred to the bill, assigning as grounds of demurrer, (1) that the bill does not show that the husband of Mrs. Knox assented to the agreement in writing; (2) nor that the agreement was in writing; (3) nor that it was such an agreement as a married woman could lawfully make, or which could be enforced against her; (4) that it was vague, indefinite, and uncertain; (5) that the corporation had no authority to take or receive subscriptions payable in land. The chancellor overruled the demurrer, and his decree is now assigned as error.

CECIL BROWNE, for appellants, cited *McDonald v. Mobile Life Insurance Co.*, 56 Ala. 468; *Sprague v. Shields*, 61 Ala. 428; *Houston v. Williamson*, 81 Ala. 482; Fry on Spec. Performance, § 538; Waterman on Spec. Performance, § 394; *Price v. Griffith*, 1 De. G., M. & G. 80; *Mercer County v. Railroad Co.*, 27 Penn. St. 389; Mor. Corp., §§ 129, 266–67.

KNOX & BOWIE, *contra*, cited *Ritch v. Thornton*, 56 Ala. 309; *Burkham v. Mastin*, 54 Ala. 122; *Publishing Co. v. Jack*, 8 Amer. & Eng. Corp. Cases, 478; 86 Ill. 504; 116 Mass. 471; 8 Gray, 303, 311; 59 Amer. Rep. 852; *Turnpike Co. v. Lancaster*, 3 Amer. & Eng. Corp. Cases, 58; 1 Mor. Corp., §§ 47–51.

STONE, C. J.—The present bill was filed for the specific enforcement of an agreement to convey lands. The complainant, the Childersburg Land Company, claims to have succeeded to the right to have the agreement specifically performed. There was a demurrer to the bill, assigning grounds, which the chancellor overruled, and from that ruling the present appeal is prosecuted. The demurrer admits the truth of every averment that is well pleaded.—*Flewellen v. Crane*, 58 Ala. 627; *Street Railway Co. v. Rand*, 83 Ala. 294.

The agreement this bill seeks to enforce is alleged to have been entered into May 21, 1887. Over twenty persons are charged to have been parties to it, several of them married

women.   The purport of the agreement, as set forth, was, that the several contracting parties agreed together each to convey designated lands to a named trustee, for purposes presently stated.   The stipulations were, that a land company should be formed and incorporated, and, when so incorporated, the trustee was to convey the lands to the corporation. These lands were to be appraised and valued by appraisers, for whose selection the agreement made provision; and when so valued, stock of the corporation was to be issued to each subscriber, in an amount equalling the appraised value of the lands contributed by him or her to the enterprise.   The aggregate of the lands thus to be conveyed was to constitute the capital of the corporation, and the aggregate of the valuations was to constitute and determine the amount of the capital stock.   The agreement as averred makes no provision for money subscriptions of stock; and there is no averment that the agreement is in writing.   The charge of the bill is, that "Amanda J. Knox and Wm. E. Knox, her husband," were and are parties to the agreement.

1.   One of the grounds of demurrer is, that the bill fails to aver that said agreement was in writing, and signed by the alleged parties to the contract.   If this question were raised under what is known as the statute of frauds—Code, 1886, § 1732—the question could not be raised on demurrer, unless the bill had shown that the contract was simply oral.—*Bromberg v. Heyer*, 69 Ala. 25; *Phillips v. Adams*, 70 Ala. 373. The question, however, must be determined under the act "to define the rights and liabilities of husband and wife," approved February 28, 1887.—Sess. Acts, 80; Code, 1886, §§ 2346, 2348.   That statute does not clothe the wife with unlimited power to contract.   It is only in exceptional cases that the wife can contract, without the consent or concurrence of her husband; and if the contract be a conveyance of realty, the contract must be in writing signed by her, and "the assent and concurrence of the husband be manifested by his joining in the alienation."—Code, 1886, §§ 2346, 2348. This ground of demurrer ought to have been sustained.

2.   Another ground of demurrer questions the power of a married woman to make a binding executory contract for the sale of land, even "with the assent or concurrence of the husband expressed in writing."—Code, 1886, § 2346.   We confess that this question is not free from difficulty.   In section 2348 of the Code it is provided, that the wife "can not alienate her land, or any interest therein, without the

[Knox v. Childersburg Land Company.]

assent and concurrence of her husband, to be manifested by his joining in the alienation in the mode prescribed by law for the execution of conveyances of land." There is difficulty in carrying this provision into effect by coercive measures. On the other hand, if she can not make a binding, enforceable executory contract for the sale of her lands, "or any interest therein," then the statute has failed to endow her with the extent of power its spirit clearly indicates. It is manifest from the general scope of the statutory provisions, that, with the exception of the express limitations placed on the wife's power of alienation, and on her power to contract and be contracted with, the statute intended to clothe her with absolute dominion over her property and personal earnings. She "has full legal capacity to contract in writing as if she were sole, with the assent or concurrence of her husband, expressed in writing."—Code, § 2346. How can this clause have its legitimate effect, if the husband or wife, either or both, afterwards, with or without reason, refuse to execute a conveyance? The principle contended for would limit the wife's power to dispose of her lands, "or any interest therein," to completely executed conveyances, and thus deny to her half the powers ordinarily exercised by *femes sole*. We hold that an agreement to sell, or to buy, executed by a married woman in writing, with the assent or concurrence of the husband expressed in writing, is binding to the same extent as if she were sole, and enforceable by all the remedies applicable to persons *sui juris*.

3. A graver question remains to be considered. At the time this agreement was entered into, the Childersburg Land Company was not incorporated. An agreement to take shares in a corporation to be afterwards formed, while it may be, and often is a binding contract, for the breach of which an action may be maintained, is, by force of the mere agreement, in no sense a subscription of stock. Something more must be done, before it can be affirmed that the subscription is a completed contract. Till a charter is obtained, or incorporation otherwise perfected, such agreement is a mere offer, or it is an option, revocable or not as the nature of the agreement may determine. The terms of the offer, and the consideration it rests on, may render it binding and irrevocable; or, a failure to withdraw such offer, even when in its nature it is revocable, until it has been accepted by actual incorporation, may so bind the offerer, that he can not afterwards withdraw it. When it rests on a valuable consideration, such

[Knox v. Childersburg Land Company.]

as a promise for a promise, then, as a rule, it become an irrevocable option, provided incorporation according to the terms of the offer is perfected within a reasonable time. This would constitute the offerer in substance a stockholder. So, if an offer, which has no valuable consideration to rest on, be permitted to stand until it is accepted by incorporation according to its terms, this, it seems, would be an irrevocable subscription of stock.—1 Morawetz Corp. §§ 47 *et seq.*; *Athol M. H. Co. v. Carey*, 116 Mass. 471; *Twin Creek & Turnpike Road Co. v. Lancaster*, 3 Amer. & Eng. Corp. Cas. 58; *M. L. & W. P. Co. v. Aldrich*, 86 Ill. 504; *I. M. Pub. Co. v. Jack*, 6 Amer. & Eng. Corp. Cas. 478; *P. F. Co. v. Balch*, 8 Gray, 303; 2 Waterman Corp. § 184; 1 Morawetz Corp. § 128.

To authorize the application of this principle, however, the corporation, both in its frame and objects, must correspond with the terms of the agreement. If there be a material departure in the character or purpose of the corporation from that which was contemplated in the agreement or offer, this absolves from all obligation to comply, unless the party sought to be charged has agreed to the change, or has done some act by which he estopped himself from setting it up as a defense. So, if, between the time of the agreement and the grant of the charter, the law be so changed that the objects of the agreement as made can not be carried into effect, this destroys the obligation. No one can be sued for the breach of an agreement, the observance of which would be a violation of the law.—2 Waterman Corp. § 178; *Mercer Co. v. P. & E. R. R. Co.*, 27 Penn. St. 389; *Thrasher v. Pike Co. R. R. Co.*, 25 Ill. 393.

4. It will be remembered that the agreement which this bill seeks to enforce, was entered into May, 1887. At that time, stock in such corporation could be made payable "in money, or in labor or property at its money value."—Code, 1876, § 1805. The charter, or act of incorporation of the Childersburg Land Company, was applied for and obtained in January, 1888. The Code of 1886 became the law of the State December 25, 1887. By that Code, § 1662, it was declared, that "all subscriptions to or for the capital stock" [of corporations like the present one] "must be payable in money." True, it was added, that "the commissioners may receive subscriptions payable in money, the subscriber having the privilege of discharging the same by the rendition of stipulated necessary services, or the performance of stipu-

[Birmingham Fire Brick Works v. Allen.]

lated labor ·for the corporation, at the reasonable value of such service or labor, or in property at the reasonable value thereof, [such as] the corporation has capacity to acquire and hold."

One difference between the two systems is, that by the later statute requiring money subscriptions, the exact amount of the capital stock subscribed can be known. By the former, it depended on the value of the services or property, to be ascertained afterwards. Under the one system, the subscriptions *per se* show the amount and value of the stock taken, and furnish a basis for incorporation.—Code of 1886, § 1660. Under the other, they would not. The one may be, and generally is, a completed contract of subscription. The other is, at most, an agreement to subscribe.

We need not, however, enter upon an inquiry as to reasons for the change. Enough for us that the legislature made it, and we have no option but to obey its will. And the fact that the agreement to form and incorporate the company was entered into before the law was changed, can exert no influence in the decision of the question we are discussing. Until incorporation was applied for and obtained, the agreement was, at most, an unaccepted offer. Before the acceptance, or attempt to accept, the offer had become illegal by force of the statute, and the power to accept was thereby taken away. The fifth and sixth additional grounds of demurrer ought to have been sustained.

Reversed and remanded.