Anna Schipper et al., Appellants, v. Block and Kuhl Company and Jean M. Morron, Appellees.
Jean M. Morron, Cross Appellant, v. Anna Schipper et al., Cross Appellees.

Gen. No. 8,959.

Opinion filed February 10, 1936. Rehearing denied and opinion modified April 7, 1936.

SHELTON F. McGRATH, CLYDE R. BIRKETT and ARTHUR B. COPELAND, of Peoria, for appellants.

WINSTON, STRAWN & SHAW, of Chicago, and MILLER, ELLIOTT & WESTERVELT, of Peoria, for appellee Jean M. Morron; E. W. EVERETT and J. D. BLACK, both of Chicago, FRANK T. MILLER, of Peoria, and DONALD G. BESTE, of counsel.

HUNTER, KAVANAGH & McLAUGHLIN, of Peoria, for cross appellee Block & Kuhl Co.

MR. JUSTICE WOLFE delivered the opinion of the court.

This suit was brought by some of the stockholders of the Block & Kuhl Company, an Illinois corporation, to enjoin it from further performing the covenants of a written lease, entered into on July 1, 1920, between the corporation and Jean M. Morron, and also to restrain actions at law by Jean M. Morron to recover from the corporation, rent stipulated in the lease to be paid to her by the corporation. We shall hereafter designate the complaining stockholders as the complainants, the Block & Kuhl Company as the lessee, and Jean M. Morron as the lessor.

Block & Kuhl Company was incorporated in 1914. The articles of incorporation provided, in part, as follows: ''The object for which it is formed is to do a wholesale manufacturing business, and to buy, sell and deal in, at wholesale and retail, all kinds of manufactured and unmanufactured products.''

It may be stated that the lease demises for a period of 99 years a parcel of real estate fronting 20 feet on Adams street in the city of Peoria, at a monthly rental, and contains a covenant that the lessee shall erect a building on the leased premises by July 1, 1934. The lessor has brought actions at law to collect rent past due under the terms of the lease. Further, it is the contention of the complainants that when the lessee executed the lease it exceeded or abused the general power conferred on it by its charter to own and control real estate and that it is now doing unauthorized acts, transactions and business, for the reasons that it acquired improperly, and now holds improperly, real estate under the lease beyond its legitimate requirements and needs, for corporate purposes, under its charter. The suit is a proceeding in a court of equity to secure a judicial cancellation of the lease.

The foregoing statement will clarify three propositions which have been considered by this court. 1. The case does not concern a wholly ultra vires act of the lessee in the sense of the term that the lessee had no power under its charter to acquire the real estate, and occupy it, as a leasehold and erect a building on the premises.

In 1932, the lessor brought an action at law in the circuit court of Peoria county against the lessee for rent due and payable under the terms of the lease for June, July, August and September of 1932. In November, 1933, the lessor brought a like action for rent then due under the lease and matured since September, 1932. The lessee has pleaded the defense of ultra

vires to the actions. The lessee has in the actions, and also in the suit at bar, repudiated the lease for the reasons heretofore stated.

Therefore the complainants cannot protect their interests, as stockholders, in the funds and property of the lessee, by or through any action of the lessee by reason of any claimed or alleged abuse of the powers of the lessee by the lessee. In other words, if the lessee could defend the actions at law by urging that the lease, or the performance thereof by the lessee, is ultra vires of the corporation, the complainants would be attempting to enjoin the lessee from performing the covenants of the lease, when in fact it is not doing so. (*Stewart v. Erie & Western Transp. Co.*, 17 Minn. 372; *Clark v. Apex Gold Min. Co.*, 13 N. M. 416, 85 Pac. 968; *Baxter v. Board of Trade*, 83 Ill. 146; *City of Chicago v. Cameron*, 120 Ill. 447.)

The complainants, being stockholders of the lessee, have the right to prosecute this suit because they are among the real beneficiaries of the lessee and they cannot obtain redress or relief through the lessee for alleged abuse of its powers. (*Marseilles Land & Water-Power Co. v. Aldrich*, 86 Ill. 504; *City of Chicago v. Cameron, supra.*) The right of the complainants to maintain this suit, however, may be barred by laches, ratification or acquiescence on the part of the complainants on the grounds of equitable estoppel. The question of the ratification of the lease by the lessee is not here referred to. (*Vide, Klein v. Independent Brewing Ass'n*, 231 Ill. 594.) We are dealing with private rights and the question of public policy is not involved.

This doctrine of estoppel is stated in the case of *Berkeley County Court v. Martinsburg & Potomac Turnpike Co.*, 92 W. Va. 246, 115 S. E. 448, as follows: "Equity will not allow a stockholder with notice of a contract which he complains of as ultra vires, or

with the means of becoming acquainted therewith, to wait an unreasonable length of time, with the view to ascertaining whether the contract will result profitably, and then repudiate it if he finds it will result in loss.'' The doctrine is also stated in Vol. 6 of Fletcher Cyclopedia of Corporations (1st Ed.) in sec. 4073, as follows: ''A stockholder who participates as an officer or as a stockholder in illegal or ultra vires transactions on the part of the directors or stockholders, or consents thereto, or who, with full knowledge of the intention to engage in such transactions, acquiesces therein, instead of objecting and taking steps to prevent the same, is estopped to afterwards sue in equity to set the transactions aside; and it can make no difference that he sues on behalf of himself and other stockholders, and that there are other stockholders who might maintain the suit.'' (*Leigh v. National Hollow Brake-Beam Co.*, 224 Ill. 76.) (See also *Memphis & C. R. Co. v. Grayson*, 88 Ala. 572, 7 So. 122; *Baker v. Spokane Sav. Bank*, 71 F. (2d) 487; and *Bissell v. Michigan Southern & N. I. R. Co.*, 22 N. Y. 258.) *Rabe v. Dunlap*, 51 N. J. Eq. 40, 25 Atl. 959.

Before the incorporation of the lessee in 1914, Schipper & Block, a corporation, operated a large department store in its own buildings situated on the corner of Adams and Fulton streets in the city of Peoria. These buildings, when the lessee was incorporated, consisted of a nine-story steel frame building, including basements, and a 10-story steel and concrete building connected by a bridge over an 18-foot alley, named Fulton Court, which runs parallel with Adams street and separates the two buildings. The two buildings are not situated on the same lot of Original Peoria. Adams street runs north and south; 171 feet east of Adams street is Fulton Court; 171 feet east of Fulton Court is S. Washington street which runs parallel with Adams street and it is one

block east of Adams street. The nine-story building, called the Big White Store, is located on lot five and occupies the entire lot having a frontage of 72 feet on Adams street and extending 171 feet on Fulton street. Lot six lies between Fulton Court and S. Washington street and it is directly east of lot five; it has a frontage on S. Washington street of 72 feet and a depth on Fulton street of 171 feet. The 10-story building, known as the Fulton street annex, is located on the west 75 feet of lot six. Adjoining and north of lot six is lot seven having the same dimensions as lot six and fronting on S. Washington street. In 1914 Schipper & Block also owned two large warehouses situated on lot seven which were used in connection with their department store to store china and furniture.

Schipper & Block, in 1914, also held a 99-year lease on what is known as the Anderson property which fronts 30½ feet on Adams street with a depth of 171 feet to Fulton Court. The Anderson property adjoins the Big White Store on the north.

The lessee (Block & Kuhl) was incorporated to operate the business of Schipper & Block. After the lessee was incorporated, Schipper & Block leased to it, under 99-year leases, the properties so owned by Schipper & Block and assigned to the lessee its lease on the Anderson property.

On January 31, 1920, the lessee acquired from Newton Matthews, by a 99-year lease, a parcel of land fronting 21 feet on Adams street and having a depth of 171 feet to Fulton Court, and adjoining the Anderson property on the north. On February 2, 1920, the lessee purchased the fee of another parcel of land fronting 21 feet on Adams street, with a depth of 171 feet, and known as the Hodges property and adjoining the Matthews on the north. Thus, the lessee had a frontage on Adams street of 144 feet with a depth of

171 to Fulton Court, before July 1, 1920, when the lease now in question is dated. It also appears in evidence that the lessee for several months before the lease is dated was negotiating with the lessor for her property.

In 1919, the lessee purchased from Schipper & Block a building located at the corner of Washington and Fulton streets, known as the Arnett Building, and adjoining the Fulton street annex on the north and the warehouses on the east. This building was an old one and it was never used by the lessee in conducting its business. The lessee disposed of the property in 1931.

In 1916, the lessee improved the Anderson property, adjoining the Big White Store on the north, by erecting a building which is in reality an extension of the Big White Store. The new building is a seven-story steel building and in every way conforms with the Big White Store building. This new building before and in 1920 was being operated as part of the Big White Store. In 1920, therefore, the lessee occupied by its department store 92½ feet fronting on Adams street.

From the foregoing it is clear that the lessee in 1920 was increasing its ownership and control of real estate fronting on Adams street which is one of the principal business streets of the city of Peoria having a population in 1920 of 95,000 persons. The property demised in the lease in question (the Morron property) adjoins the Hodges property on the north. The lessor's tract of land adjoins the Hodges property and it has a frontage on Adams street of 20 feet and a depth of 171 feet to Fulton Court. When the Matthews property was leased by the lessee, under a 99-year lease, one J. P. Schnellbacher held a lease to the property which did not expire until 1933 and Schnellbacher retained possession of the property under his lease during the year 1920 when the lease now in question was dated.

When the lessee acquired the Hodges property, it was also subject to a lease. Schipper & Block was incorporated in 1879. Before 1920, it is safe to say that the lessee was doing an annual business of over $3,000,000. On January 26, 1920, the lessee adopted a resolution to increase its capital stock from $1,200,000 to $1,450,000.

Whether or not the lessee exceeded its power by executing the lease now in question could not be ascertained by an examination of its charter. A determination of that question depended upon an inquiry of facts extraneous to the charter. The facts and situation, as above stated, do not justify us in holding that the lease was voidable by the lessee *ab initio*. In the case of *People v. Pullman's Palace Car Co.,* 175 Ill. 125, it was held that a corporation had a right to erect a building for its own purposes and that in so doing it had a right to take into consideration its probable prospective requirements and look after and prepare for the future, and that there was no reason why such parts of the building as were not required for present use for the accommodation of its business should remain vacant, but that the same might be lawfully rented to other persons. It was further held, however, that: A corporation could not be permitted, under mere color and pretense of furnishing accommodations for the transaction of its own affairs, to construct houses or rooms for the purpose of renting the same, and engage in renting such houses or rooms as a business, if such pursuit was, beyond and distinct from which it was created to pursue and accomplish.

The evidence in this case shows that at the time the lease was entered into between the parties, that the lessee was doing a good business and the lease was believed by the corporation to be a profitable one. The corporation had a right to acquire a reasonable

amount of property for the expansion of their business. That the lease has not proven to be a benefit to the lessee is regrettable, but does not have any bearing on the validity of the lease at the time it was executed. It is our conclusion that the lease in question was not ultra vires of the corporation.

Each of the complainants was a stockholder of the lessee in 1920 and each continued to be such a stockholder until the filing of the present suit. The suit was filed November 2, 1933. During the time the lease was being enforced by the lessee, from November 1920 (when the lease was delivered) until November 2, 1933, the law afforded the complainants the right to appeal to the courts, through the lessee, for an injunction to restrain the lessee from abusing its powers under its charter, and, if unable to secure redress from such alleged misconduct on the part of the lessee through it, to file a bill of the same character as the one filed in the present suit. The complainants must be held to have been possessed of knowledge for many years that the lessee acquired the lessor's property by leasehold interest therein and had agreed to erect a building thereon by 1934. The acquiescence of the complainants in the performance of the lease by the lessee for so many years, coupled with the fact that the lessor has sustained irreparable and incalculable damages because of the failure of the lessee to erect such a building, estops the lessee from maintaining this suit. *Kadish v. Garden City Equitable Loan & Bldg. Ass'n,* 151 Ill. 531, 538.

Section eight of the Business Corporation Act, Ill. State Bar Stats. 1935, ch. 32, ¶ 8, does not give the complainants a right to sue in equity which they did not have at common law. The section reserves to the complainants in a suit of this kind the prior existing right to urge the alleged ultra vires acts of the lessee. If we are to set aside and enjoin the per-

formance of the lease because we deem it equitable to do so, as the section provides, then we must be governed by equitable principles and rules heretofore established by the decisions and authorities.

The chancellor dismissed the bill for want of equity. The lessor filed a cross-bill and has now assigned cross errors in this court that the trial court erred in not awarding to her a money judgment for rent matured under the terms of the lease and also for her attorney's fees in defending this suit. The cross errors cannot be sustained. *People v. Fisher,* 335 Ill. 406; *Fuller v. Hansen,* 187 Ill. App. 417.

What we have here said, of course, is without prejudice to cross appellant's right to proceed to take any steps in any other proceeding to recover their attorney fees and rent as they may be advised.

The decree of the chancellor dismissing the bill for want of equity is affirmed.

*Affirmed.*