ALFRED B. DAVIS et ux.

*v.*

THOMAS & DAVIS COMPANY et al.

[Filed July 10th, 1902.]

1. Corporation directors cannot fix their own salaries for services rendered their corporation, and when they attempt to do so they will be allowed only the actual value of such services.

2. Three directors of a wall paper corporation voted themselves salaries of $5,000 a year each, as president, vice-president and secretary, respectively.—*Held*, on review of the evidence, that the services were not sufficient to justify the $5,000 salaries, $2,000 a year each being sufficient.

*Mr. John H. Backes,* for the complainants.

*Mr. John W. Wescott,* for the defendants.

REED, V. C.

The purpose of this suit is to compel three directors and officers of the defendant corporation to return to the receiver of the Thomas & Davis Company all or a portion of the salaries which these three directors voted to themselves.

The Thomas & Davis Company was incorporated on June 23d, 1898, with an authorized capital of $100,000. The corporate purpose was the manufacturing of wall paper. Its works are located at Newark, Delaware. The property which afterwards became that of the Thomas & Davis Company had belonged to the Delaware Wall Paper Mills Company. There were judgments and attachments against the latter company, which judgments and attachments Mr. Thomas purchased. On June 20th, 1898, Mr. Davis, the complainant, who had operated the Delaware Wall Paper Mills Company's plant, entered into an agreement with Mr. Thomas relative to the organization of a new company, namely, the Thomas & Davis Company. By the terms of this agreement Mr. Thomas was to subscribe $3,700 and Mr. Davis $3,000 for stock in the new company. Mr. Davis was to procure the property of the Delaware Wall Paper Mills Company and convey it to the new company. Mr. Thomas was to have nine hundred and thirty-three shares of the new company and its judgment note for $8,953.49, and Mr. Davis was to have four hundred and twenty shares of the new company. These terms of the agreement were executed.

Afterwards Mr. Frank H. Remein and Alois Podrasnick each bought one-third of the interest in the corporation which Mr. Thomas held, each paying for such one-third interest $8,333.33. At the annual meeting of the stockholders, held July 27th, 1899, Mr. Remein, Mr. Podrasnick and Mr. Thomas were elected directors. Immediately afterwards they held a directors' meeting, at which Mr. Podrasnick was elected president, and Mr. Thomas vice-president, and Mr. Remein secretary and treasurer. At this meeting it was resolved to pay each of these officers a salary of

$5,000 a year. At this meeting it also seemed to have been resolved or understood that Mr. Thomas was to have, as manager, the sum of $96 a week. This was exclusive of the sum voted to him as salary. From the date of that meeting, for a year and seven months, these sums have been drawn by the three officers mentioned.

It is entirely settled that where directors of a corporation attempt to deal with themselves, their acts are the subject of judicial inquiry and supervision. Directors cannot fix the value of their own services to the corporation. Whenever they attempt to do so, and their action is challenged by a stockholder, or other interested persons, the burden is upon them to show what they have done to merit payment, and the quantity of compensation to which they are entitled is to be graded, not by the sum voted, but by what they earn. *Gardner* v. *Butler, 3 Stew. Eq. 702, 725; Fougeray* v. *Cord, 5 Dick. Ch. Rep. 185.*

The question, then, is this, Did each of these directors render services to the company for which he is entitled to be paid, and if so, to what amount is he entitled?

First, then, in respect to the merits of Mr. Thomas. He was the manager of the works. He says that previous to his engaging in the present enterprise he had received $100 a week as manager. From the inception of his engagement with the Thomas & Davis Company he had drawn $15 a week up to the meeting of the directors, already mentioned, on July 27th, 1899. In speaking of what he did, he says he managed the business, attended to the correspondence, made new designs, and, during the first year, made the sales of the products of the plant. After that date he took no part in the sales of the products. Up to that date he had employed expensive experts, but after that date he attended to the preparation of the colors himself. The extent of the business which he managed is indicated by his statement that from June, 1898, to January, 1899, they had two machines, and after that three machines, and produced during that year one million three hundred thousand rolls of paper. The second year after the meeting of July 27th, 1899, they made two million seven hundred thousand rolls, with, as Mr. Thomas says, three and one-half machines.

In January, 1901, on account of the failure of the Continental Wall Paper Company in the preceding July, with which company the Thomas & Davis Company had a contract to take its output, the Thomas & Davis Company ceased business. Mr. Thomas issued executions on the judgment which he held against the concern, and he and Mr. Remein and Mr. Podrasnick, each holding a one-third interest in the judgment, bought in the stock, and leased the plant from its receiver, appointed by the court of chancery in Delaware, and proceeded to conduct business therein.

In respect to Mr. Remein and Mr. Podrasnick, as already remarked, they became directors on July 25th, 1899. Their claim to remuneration is rested upon their services as directors. They claim they secured a modification of the contract which, at that time, existed between the Thomas & Davis Company and the Continental Wall Paper Company. The Continental Wall Paper Company was a central wall paper selling organization. Its purpose was to fix prices for the trade and take the products of wall paper factories. By its agreement with the Thomas & Davis Company it was to take the product of the company at cost price, and the amount of the product which they pledged themselves to take was limited by the then present capacity of the plant. It then sold to jobbers at an advanced price, about double the cost price. It got its profit in the difference between the cost price paid to the manufacturer and the advance price at which it sold to jobbers. For this profit it agreed to pay the Thomas & Davis Company $15,000 a year. The contract was existing in this shape when Remein and Podrasnick bought their interest in the stock of the Thomas & Davis Company.

These gentlemen claim that afterwards they induced the Continental Wall Paper Company to enter into a new contract, conceding to the Thomas & Davis Company much more advantageous terms than those contained in the original agreement. By the new agreement the Thomas & Davis Company were to get fifteen per cent. on the gross price of its output, with a guaranteed minimum sum of $25,000, and the payments were to be monthly. In addition to these services, Mr. Remein, Mr. Pod-

rasnick and Mr. Thomas met in New York, about Christmas time, and spent about a week in picking out designs for the second year's business. About three months after this date Mr. Remein and Mr. Podrasnick came again from Chicago, where they lived, and spent a week in selecting the different colors that the patterns had to be made in. In the summer they came again, when the annual stockholders' meeting was held. In addition to these services, they claim that they sold the goods for the company, and thus saved the salaries or commissions which otherwise would have been paid to agents for that service. In addition to this, they claimed that they were counseling Mr. Thomas, through correspondence, in respect to the management of the plant.

Recurring to the claim that from their efforts the original contract with the Continental Wall Paper Company was modified, it clearly appears that while the second agreement was signed in August, 1899, its terms had been agreed upon previous to the meeting of July 27th of that year. They disclaim that previous to the meeting of the board of directors on that date there had been any understanding that they should be paid for their services.

The substantial ground upon which their claim rests is that they rendered services in selling the output of the plant. In attempting to approximate the value of such services, from the testimony in the case, it is to be remarked that up to July 1st, 1900, the sales were made through the Continental Wall Paper Company. The principal claim is that the bulk of the output of the company was sold to the Podrasnick & Remein Company, located in Chicago. This company was originated in November, 1900. Mr. Podrasnick and Mr. Remein were wall paper jobbers, doing business individually and separately in Chicago at the time they bought an interest in the Thomas & Davis Company. The Podrasnick & Remein Company made its profits, of course, in the advanced prices charged by it over the cost price paid by it. The Podrasnick & Remein Company bought paper from a number of factories, and Podrasnick and Remein claim that they influenced the company to take the goods of the Thomas

Davis *v.* Thomas & Davis Co.

& Davis Company plant, they acting as members of the buying corporation in selecting the papers to be purchased.

It does not appear how much was purchased by the Podrasnick & Remein Company, but as it was organized in November, and the Thomas & Davis Company ceased work in January, the period covered by such transaction was very brief. Podrasnick and Remein also claim that they sold some $42,000 worth of goods to other parties; but when these sales were made does not appear, but it does appear that other agents were concerned in bringing about these sales.

During the period when sales were made through the Continental Wall Paper Company the Thomas & Davis Company seems to have been privileged, by the terms of the contract, to sell to parties other than jobbers, for which sale they were entitled to certain commissions; but the amount of such sales and of the commissions arising from them is unascertainable from the testimony.

My consideration of the testimony has led me to the conclusion that while Mr. Podrasnick and Mr. Remein were entitled to be remunerated for their services, the degree of remuneration fixed, practically by themselves, is extravagant. Conceding to them the remuneration for all their services in inducing a change in the contract with the Continental Wall Paper Company, and their trips from Chicago to the east, and such services as they rendered in selling paper, and regarding the volume of business of the corporation, I think $2,000 a year each would be ample remuneration.

As to Mr. Thomas, I do not perceive that he rendered any services as officer of the company. The services he rendered after July 27th, 1899, were no greater than, or different from, the services he rendered previous to that date as manager. In fact, from the testimony of these three gentlemen, he had, by reason of the services rendered by Mr. Podrasnick and Mr. Remein, been relieved from much of the responsibility which he had previously assumed.

The remuneration voted to him as manager, of $96 a week, he is entitled to retain.

37

Nor do I think that the remuneration, at these rates, should continue later than January, 1901.

Amounts drawn in excess of these rates must be accounted for by these three defendants.