Jones, J.,
 

 dissenting. I am substantially in accord with this court and the Court of Appeals upon the legal principles controlling controversies such as we have here; but I am fully convinced that the cause was tried in the trial court as if it were an action in
 
 quantum meruit.
 

 Since the extra compensation in controversy was fixed by single resolutions of the board of five directors (three of whom, including this plaintiff in error, being adversely interested and voting therefor), such resolutions, if not void, would at least be voidable in an action by the officer to recover the compensation. In such case I agree with the view of the Court of Appeals that the officer, if he recovers, must recover as upon a
 
 quantum meruit.
 
 In the course of its opinion, the Court of Appeals said:
 

 “The plaintiff is entitled to recover what his services were reasonably worth.
 
 Davis
 
 v.
 
 Thomas & Davis Co.,
 
 63 N. J. Eq., 572 [52 A., 717]. It appears from the record that the directors intended that he should be paid more than the fixed salary, and he faithfully performed his duties with the expectation of additional compensation. Therefore in a trial on the
 
 quantum meruit,
 
 if he deserves more, he can show it and recover such additional compensation.”
 

 
 *352
 
 In support of its opinion, the case of
 
 Gardner
 
 v.
 
 Butler,
 
 30 N. J. Eq., 702, was cited. This is one of the leading cases upon the subject, the second proposition of the syllabus reading as follows:
 

 “If directors are employed in the business of the company, and agree to pay themselves a stipulated sum, the agreement is void, and no recovery can be based upon such contract, but for such services as they render they can recover upon the
 
 quantum meruit
 

 Alluding to the beneficial obligations in Ms own favor passed by a vote of the director interested, the chancellor, in the foregoing case, said:
 

 “The agreements, therefore, which the directors made with themselves, must be pronounced to be illegal, and can furnish no support to their defense, as contracts. But while the express undertaMng is without legal force, the directors of a company have a right to serve it in the capacity of officers, agents or employes, and for such services the law will enable them to recover a just and reasonable compensation. The law restrains them from maMng a contract where their own gain intervenes between their exercise of judgment and their duty as trustees, but it does not operate to deprive the company of the service of those who, in many cases, may alone possess the sMll requisite to the successful management and conduct of the corporate business, and who may have the chiefest interest in its prosperity. Stockholders, because they are directors, are not compelled to commit the success of their company to strangers, or else render their own services gratuitously. No claim which they may make against their company can
 
 *353
 
 acquire any support or validity from the fact that they have expressly sanctioned it; it must rest exclusively upon its fairness and justice, and be enforced upon the
 
 quantum meruit.
 
 That such is the full scope and effect of the rule, and the extent to which the transaction is annulled, will be found by an examination of the cases. * * * The contract will not be regarded, but the services having been rendered, and the company having received the benefit of them, it would be manifestly inequitable to deny to the trustee a fair equivalent for them. It would pervert a rule of law which is intended to guard against fraud and injustice. The right of a trustee to recover on the
 
 quantum meruit,
 
 where the contract is illegal, is recognized in our courts.” Citing authorities.
 

 To the same effect is the case of
 
 Davis
 
 v.
 
 Thomas & Davis Co., supra,
 
 the first proposition of the syllabus reading:
 

 “Corporation directors cannot fix their own salaries for services rendered their corporation, and when they attempt to do so they will be allowed only the actual value of such services.”
 

 Copious annotations covering the same subject may be found in 27 A. L. R., 300, where various authorities are collected and cited. See, also,
 
 Booth
 
 v.
 
 Beattie,
 
 95 N. J. Eq., 776, 118 A., 257, 123 A., 925.
 

 The record in this case discloses that the three interested directors, whose vote was required to pass the resolutions affecting their salary and compensation, were those who were chiefly engaged in looking after the control and management of the corporation. Briggs himself was the president
 
 *354
 
 and general manager. During the time that he and they had control, the earnings were quite large in some years and in others smaller. Because of the fact that the fixed salaries of these three members of the board were not sufficiently large in prosperous times, when, the earnings were large, it was no doubt the purpose of the five directors, including the interested three, to give an added compensation by way of bonus based upon earnings of the company over and above certain amounts required to pay dividends upon its stock, common and preferred.
 

 I agree with the Court of Appeals that under the circumstances, the fixing of the salary and extra compensation by the aid of the votes of the directors interested was voidable and subject to scrutiny. However, if the plaintiff in error cannot recover by force of the resolutions awarding him compensation, under the authorities cited he had a right to invoke the determination of the court upon the issue whether the extra compensation received by him for services during such years was, in fact, fair and reasonable. If the resolutions of the board were such as to create a contract which was unenforceable as such, still, if the plaintiff fully performed it on his part, he would be entitled to sue upon
 
 11 quantum
 
 meruit.”
 

 “When one furnishes labor to another under a contract which, for reasons not prejudicial to the former, is void and of no effect, he may recover the value of his services on a
 
 quantum meruit
 
 as a benefit to the person receiving them.” 28 Ruling Case Law, p. 693.
 

 One of the cases cited in support of the text is
 
 *355
 

 Towsley
 
 v.
 
 Moore,
 
 30 Ohio St., 184, 27 Am. Rep., 434. In that case a contract made with the defendant was unenforceable because within the Ohio statute of frauds. Plaintiff recovered the reasonable value of her services. There is no distinction in principle between that case and the one at bar. There the insistence was that the contract was void because of the statute; here it is insisted the contract for extra compensation' was void as against public policy. But, as just stated, this court held that, after performance of the contract by one party, the other having obtained its benefits, the latter “cannot refuse to pay the reasonable value thereof.”
 

 The Court of Appeals evidently was of the opinion that this was not an action on the
 
 quantum meruit
 
 and was not tried upon that theory. But an examination of the record, consisting of the amended petition and answer, as well as the course of the trial, disclose that the
 
 quantum meruit
 
 issue was not only pleaded, but was in fact tried out in the trial court. In his amended petition, after setting forth the various resolutions of the board of directors, and the crediting to him on the books of the corporation of various amounts, pursuant to said resolutions, the plaintiff alleged:
 

 “Plaintiff further says that, in view of the services performed and the financial results obtained by him for the benefit of said corporation, the remuneration provided under said contract for said years was fair, reasonable, and moderate, and thereby there became and is due and owing to him from defendant,” etc.
 

 The prayer of the petition asks that the defend
 
 *356
 
 ant be ordered to pay the amounts credited, or, in the alternative, if such amounts were not due him, the petitioner asks the court to determine plaintiff’s rights, “and that the defendant be ordered to pay plaintiff the amounts to which the court finds he is entitled,” and for such other relief as may be just and equitable.
 

 Section 11345, General Code, reads:' “The allegations of a pleading shall be liberally construed, with a view to substantial justice between the parties.” The common-law rule, construing pleadings most strongly against the pleader, has been abrogated in this state in favor of a rule of construction favoring the party pleading.
 
 Robinson v. Village of Greenville,
 
 42 Ohio St., 625, 51 Am. Rep., 857. The latest expression of this court upon the subject is contained in
 
 Hadfield-Penfield Steel Co.
 
 v.
 
 Sheller,
 
 108 Ohio St., 106, 141
 
 N.
 
 E., 90, wherein it is said in the opinion at page 112 (141 N. E., 92):
 

 “The later decisions of this court uniformly hold that pleadings should be given a construction most favorable to the pleader. This is true at and before trial and the rule has added force in an appellate court upon review where evidence has been received without objection at the trial.”
 

 As hereafter stated, no objection was taken by any of the parties hereto with respect to the evidence of witnesses offered as to the reasonable value of plaintiff’s services during the period of controversy.
 

 The answer filed by the defendant denied the foregoing quoted allegation of the petition, that the remunerations provided by the resolutions were
 
 *357
 
 “fair, reasonable, and moderate,” and averred that the amounts referred to were “unlawful and unwarranted, excessive and unreasonable.” And, in the second defense, the defendant alleged that the sums sought to be recovered were unreasonable and excessive; so that we had the issue made directly upon the
 
 quantum meruit,
 
 as to whether the sums claimed by plaintiff below for extra compensation were reasonable and just. The journal entry of the trial court recites that upon the issues submitted upon the pleadings and the evidence the court found “the issues joined in favor of the plaintiff.” This judgment was in effect a finding that the remuneration given to plaintiff by the various resolutions of the board was no more than was reasonable and just.
 

 Not only did the pleadings make the issue of
 
 quantum meruit
 
 as herein stated, but the issue of fairness and reasonableness of the amount sued for by plaintiff as compensation was tried out by the testimony adduced by both parties. Three witnesses for the plaintiff, and one for the defendant, testified upon this subject, each testifying
 
 without objection
 
 as to the feature of reasonable value. Mr. Briggs testified:
 

 “Q. Was your compensation, from your experience in the business, do you say, if all the money you claim had been paid you, was it fair and reasonable? A. I thought it was less than I ought to have.”
 

 Mr. Bauer, the other interested director, testified:
 

 “Q. From your experience and knowledge, would you say the compensation was reasonable or unreasonable? A. Reasonable.
 

 
 *358
 
 “The Court: Any doubt about it? Witness: None whatever.
 

 “The Court: You know what the compensation is, Mr. Bauer; I assume that you know after sitting here and hearing the evidence of the plaintiff?
 

 “Witness: Yes, sir.”
 

 One, Vincent, who was not connected with the company, testified to the following without objection from the defendant:
 

 “Q. Mr. Vincent, assuming that a man was employed on or about the year 1915 to take charge of a large wholesale grocery which had probably 2,500 accounts on its books and the book value of the stock at that time was 107; that in 8-2/3 years it was increased to 211; that he increased the surplus account in that time to $335,000, and paid in dividends during that year 108 per cent., net earnings during that period about $641,000, also was paying out during that time to employes as extra compensation about $176,000, what in your opinion is the reasonable value of such services? A. I would say from $15,000 to $20,000 a year.”
 

 On the other hand we have but a single witness for the defendant, testifying by way of cross-examination as to the reasonableness of this compensation, and that is Mrs. Lena Apple, who was a member of the board of directors, and who was claimed to have been one of the members who seconded the resolution purporting to have been adopted on December 31, 1919, when Briggs, as president of the company, was awarded extra compensation amounting to $9,000 for the operating year 1919. The company during that year had made earnings amounting to $137,153. The resolution award
 
 *359
 
 ing Mr. Briggs the sum of $9,000, according to the minutes, was seconded by the witness Apple. While she claims that no such resolution was offered, and disclaims seconding it, that fact was disputed. The Court of Appeals evidently thought that this resolution of December 31, 1919, was unanimously passed later, but dated back as of December 31, 1919. At any rate from the cross-examination of the single witness who testified for the defendant upon the reasonableness of the director’s compenssation, the witness Apple found herself considerably embarrassed by the resolution of December 31, 1919, and the most that can be claimed for her testimony is that, while she thought the amount of $9,000 awarded Briggs for extra compensation was too large, Briggs should in fact have had more than his fixed salary because of the extremely large earnings of the company during that year. The trial court, upon the evidence submitted to it, could well have found, as it did in its journal entry, the issue of the fairness and reasonableness of Briggs’ compensation in favor of the plaintiff in error.
 

 Since no findings of fact were made, and the issues were found by the trial court generally in favor of the plaintiff, and, furthermore, since the reviewing court did not reverse the judgment on the weight of the evidence, the finding of the trial court was left undisturbed.
 

 Some question is made upon the record, claiming prejudicial error upon the part of the trial court in overruling the defendant’s motion to order the plaintiff to state separately his various causes of action. Upon that feature we may well adopt
 
 *360
 
 the language of Johnson, J., in
 
 Bear
 
 v.
 
 Knowles,
 
 36 Ohio St., 43, 45, that, “if it was an error to overrule this motion, * * * it is one that must be disregarded by the requirements of Section 138 of the Code of Practice.” The syllabus in that case is as follows:
 

 “The refusal of a court, in which a civil action is pending, to sustain a motion to separately state and number several causes of action which may be united in one petition, is not an error for which the final judgment will be reversed, unless it appears that by such refusal the adverse party has been deprived of a substantial right.’
 

 That ruling was simply an adherence to Section 11364, General Code, found in our chapter relating to pleadings; the section provides that in every stage of an action the court must disregard any defect in the pleadings which does not affect the substantial rights of the adverse party.
 

 It is difficult to see of what substantial right the defendant was deprived in the trial court. The defendant availed itself of the opportunity and did examine every phase of the controversy concerning the compensation of plaintiff between the years 1915 and 1924. In fact, the issues' during the whole period of time adverted to, together with the resolutions of the board, the earnings of the company, and the various annual allowances made to plaintiff for extra compensation, were all submitted to and heard by the trial court. No possible prejudice could have resulted to either party; nor was either deprived of a substantial right in that respect.
 

 For the reasons stated, the judgment of the court of common pleas should have been sustained.