[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 163 
At the trial of this action I was constrained to remark that I regarded it to be lamentable that this widow and her step-daughter, the principals in this litigation, should permit personal antagonisms to overcast that intelligent conciliatory prudence which is undoubtedly native to both and thereby possibly to jeopardize the continuance of an industrial enterprise so successfully conducted and developed over a span of years by the late Bayard L. Dunkle. *Page 164 
It was in 1906 that Mr. Dunkle caused the incorporation in New Jersey of the National Porcelain Company to engage in the manufacture of pottery, porcelain, and tile. In July 1943 the corporate name of the company was changed to National Ceramic Company, by which it is now known. The business operations continue under the management of Mr. Joseph A. Schermerhorn, who has been associated with the company since 1929.
On March 5, 1947, Mr. Dunkle, while sojourning with his wife in Florida, died testate, possessed, inter alia, of 1551 shares of the common stock of the corporation, of a total of slightly less than 2000 shares issued and outstanding. By his will he nominated his widow and the Broad Street National Bank of Trenton as the representatives of his estate. The plaintiff is the daughter of the decedent by a former marriage, a stockholder of the company, and a life beneficiary of a portion of the income to be derived from a testamentary trust established by the decedent, the corpus of which consists of the common stock held by him.
Tersely stated, the subject in controversy is introduced by the charge of the plaintiff in a bill (subsequently amended) filed on April 12, 1948, in the Court of Chancery, that since the death of her father, Mr. Dunkle, the defendant Mae K. Dunkle, widow of the decedent, has profitably contrived to acquire for her personal use excessive sums of money from the funds of the corporation under the ostensible guise of salary to which she has not been lawfully or reasonably entitled. The plaintiff implores this court to investigate. Cf. Riddle v. Mary A. Riddle Co.,142 N.J. Eq. 147, 59 Atl. (2d) 599.
It is perhaps well to interject here the information that the plaintiff's complaint against the executors and the counterclaims against the plaintiff were voluntarily dismissed and withdrawn respectively at the trial. The corporation properly assumes a neutral position. Slutzker v. Rieber, 132 N.J. Eq. 412,28 Atl. (2d) 528.
A summarized narrative of the major factual circumstances will, I trust, reveal the basis, under applicable principles of law and equity, of my final judgment. *Page 165 
Although Mr. Dunkle, died, as I have said, in Florida on March 5, 1947, Mrs. Dunkle immediately returned to Trenton and on Saturday, March 8, 1947, she invited Mr. Schermerhorn, the general manager of the company, Miss Hunt, an office employee of secretarial ability, and the plaintiff to assemble at her home at a stated time on the following day, Sunday, March 9, 1947. Thus congregated Mrs. Dunkle announced that in accordance with her interpretation of the wishes of her late husband, she would temporarily clench the offices previously occupied by him of president and treasurer of the corporation at an annual salary of $12,000. The nail was hit on the head, and one can easily envision the speechless servility of those who were present, then unaware of the testamentary desires of Mr. Dunkle, and sense their submission to the representations of Mrs. Dunkle so authoritatively expressed.
Mrs. Dunkle circumspectly contemplated the propriety of having some memorial of the action thus taken embodied in the minutes of the activities of the corporation. This she directed Mr. Schermerhorn to accomplish with the aid of Miss Hunt, Her directions were obeyed and a conformable note was inserted in the minute book, but upon reflection Mrs. Dunkle apprehended that perhaps the action taken on a Sunday might not be lawful, and she requested that the entry in the minutes be amended to relate to a meeting purported to have been held on Saturday, March 8, 1947. Again her request was respected. On March 10, 1947, Mrs. Dunkle achieved her first opportunity to examine her husband's will, and upon ascertaining that her husband had failed to make any immediately available cash bequest to her, she instructed Miss Hunt again to amend the notes to indicate an official approval on March 8, 1947, of her salary at the sum of $24,000 per annum. The surviving note indicates that the latter action was taken at a meeting held on March 10, 1948.
There is demonstrable evidence that four and perhaps five testimonials relating to the purported election of Mrs. Dunkle as president and treasurer of the company and to the amount of her annual salary were inserted in and extracted from the *Page 166 
minute book of the corporation with an agility rivaling the art of prestidigitation.
Mrs. Dunkle through the generosity and expediency of her husband was a stockholder and director of the company; Mr. Schermerhorn was a stockholder but not a director; Miss Hunt was neither. It appears now that the plaintiff previously had been made a director by her father but inferentially, I believe, such was done to subserve his own convenience, and in view of his daughter's testimony I gravely doubt that in March 1947 she was aware that she was a director and then cognizant of her authority as such. I am satisfied that no one other than Mrs. Dunkle at the informal caucus on March 9, 1947, expressed an affirmance of her election to the offices of president and treasurer and an approval of her salary. Indeed, it is not evident that in consequence of the death of Mr. Dunkle there were on March 9, 1947, three surviving directors of the company (R.S. 14:7-1,N.J.S.A.) until Mr. Paul O. Abbe subsequently received the requisite stock to qualify him as a director. In any event, respecting his status, it is not disclosed that he received any actual notice of the so-called special meeting, and he was not present. Metropolitan Telephone, Etc., Co. v. DomesticTelegraph, Etc., Co., 44 N.J. Eq. 568, 14 Atl. Rep. 907. The directors could only act as a body, lawfully assembled. Moffattv. Niemitz, 102 N.J. Eq. 112, 139 Atl. Rep. 798. See, also,United States Steel Corp. v. Hodge, 64 N.J. Eq. 807,54 Atl. Rep. 1. It is indubitable that there was no convocation of directors or stockholders on March 10, 1947, at which time Mrs. Dunkle resolved to double her previously announced salary.
In that particular, the testimony of Mrs. Dunkle at the trial may be compared with her affidavit filed in this cause on July 28, 1948, in which she deposed:
"There was, however, a meeting held on Sunday, March 9th, 1947 by the directors at 29 Richey Place at which time Mrs. Worley was present and also Mr. Joseph A. Schermerhorn, who was elected secretary of the National Ceramic Company. It was voted at that meeting that I should be elected President and Treasurer at a yearly salary of $12,000.00. Mr. Schermerhorn wrote up the minutes and dated them March 8, 1947. On Monday, the day following the meeting, *Page 167 
I read for the first time the will of Bayard L. Dunkle and realized that there had not been adequate provision for my support prior to the settlement of his estate. I thereupon called Mrs. Worley on the telephone and explained the situation to her and stated that I thought the salary of $12,000.00 should be raised to $24,000.00 and she did not object. I also called Mr. Schermerhorn and told him the same thing. Early on Tuesday morning, I called Miss Hunt, who is the Stenographer at the plant and asked her to write another set of minutes incorporating $24,000.00 instead of $12,000.00 and to have Mr. Schermerhorn sign them and bring them to my house where the minute book was at that time located."
I uproot the following quotation from the answer of Mrs. Dunkle to the amended bill of complaint:
"She denies the allegations contained in the 6th paragraph of the amended bill of complaint and says that the true facts are that, at a Meeting of the Board of Directors held in March, 1947, a salary was voted to her of $24,000.00 per annum and not the sum of $12,000.00 as set forth in the 6th paragraph of the amended bill of complaint. She has been paid on the basis of $17,800.00 although she has been entitled, by resolution, to receive $24,000.00 per annum. The resolution was passed by the Directors and, therefore the executors and trustee under the last will and testament of Bayard L. Dunkle were not entitled to vote. At the time of the passage of the resolution, there were only two directors, namely, the complainant and this defendant and the complainant did not, at that time, make any objection to the passage of the resolution."
It seems to me perfectly manifest that Mrs. Dunkle was not lawfully elected president and treasurer of the company and that neither an annual salary of $12,000 nor $24,000 was sanctioned at any lawfully organized meeting of the directors or stockholders. Pretending to be the majority stockholder and suppositional successor of her husband's interest in the company, she sought to establish herself in the corporate organization at an attractive salary. In that, she has legally failed.
Mrs. Dunkle has, however, collected from the corporation $15,018 in 1947 and $16,224 in 1948, each sum inclusive of social security and withholding tax, for services asserted to have been rendered by her in executive capacities for the corporation. In the circumstances hereinbefore disclosed, the burden devolves upon Mrs. Dunkle to establish the value of her services. Lillardv. Oil, Paint Drug Co., 70 N.J. Eq. 197, 56 Atl. Rep. 254. *Page 168 
Considerable testimony has been received pertaining to the nature and extent of the services performed by Mrs. Dunkle which were in any appreciable degree beneficial to the stockholders of the corporation. Assuredly a salary at the rate of $24,000 a year constitutes an exorbitant compensation. The quantum of compensation to which Mrs. Dunkle has been entitled is to be measured not by the sum stated in the minutes but by what she has earned. Davis v. Thomas Davis Co., 63 N.J. Eq. 572, 574,52 Atl. Rep. 717; Raynolds v. Diamond Mills Paper Co.,69 N.J. Eq. 299, 60 Atl. Rep. 941.
It must be acknowledged that the fixing of salary by the sole vote of a majority stockholder is exposed to the review of a court of equitable jurisdiction. Lillard v. Oil, Paint DrugCo., supra. And when the compensatory comparison of the salary to the reasonable value of the services rendered is drawn into dispute by a dissentient stockholder, the fair and reasonable amount of compensation must be determined by the court. Riddlev. Mary A. Riddle Co., supra; Gardner v. Butler, 30 N.J. Eq. 702.
I ascertain from paragraph 7 of the amended complaint and the admission of its allegations by the answer of Mrs. Dunkle that the late Mr. Dunkle, the founder and potential owner of the enterprise, whose long experience in the trade and constant superintendence of all of the operations of the business bespeak the value of his services, received an annual salary of $15,000.
I have resolved that a fair and reasonably adequate compensation for the type of services actually rendered by Mrs. Dunkle for the corporation should be computed at the rate of $625.00 per month. She will be directed to refund the excess to the corporation.
It is proposed that the present prayer for judicial inquiry and intervention should be ignored because of the failure of the plaintiff diligently and promptly to protest against the determination of Mrs. Dunkle to exact the alleged inordinate salary from the corporation. A mere omission to protest in the absence of evil complicity in the particular transaction in respect to which judicial protection or redress is sought does *Page 169 
not disqualify a complainant under the equitable principle of unclean hands. Tami v. Pikowitz, 138 N.J. Eq. 410,48 Atl. (2d) 221; 2 Pom. Eq. Jur. (5th ed.) §§ 397, 399, et seq.
Recognizing the fact that the present cause of action is pursued essentially for the benefit of the corporation and its stockholders, and mindful also of the death of Mr. Dunkle, the situations of the parties, and the period devoted to the preliminary conferences and investigations, and other relevant circumstances, I am disinclined to suppress the suit on the ground of laches.
Judgment for the plaintiff in conformity with the conclusions expressed in this memorandum.