8 N.J. Super. 475 (1950)
73 A.2d 617
LOUISE M. FARRIS, PLAINTIFF,
v.
FARRIS ENGINEERING CORPORATION, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided May 8, 1950.
*476 Messrs. Winne & Banta, attorneys for plaintiff, by Mr. Walter G. Winne.
Mr. Harold S. Okin, attorney for defendants; Mr. John Milton and Mr. Morris M. Ravin, of counsel.
STANTON, J.S.C.
This is essentially a controversy between a husband and a wife as to their respective interests in a partnership and two corporations. Each instituted an action against the other, and by appropriate order, these were consolidated into one action under the title set forth above. Farris Engineering Company is the partnership and Farris Engineering Corporation and Farris Industrial Corporation are the corporations in question, and for ease, they will be referred to respectively as the partnership, the corporation and the industrial corporation.
Plaintiff, asserting that she and her husband were equal partners, demands that the stock of each corporation be issued to him and her in equal shares and that he account for excessive salaries received from the corporations. Farris seeks an *477 adjudication that his wife has no interest in either corporation; that she convey to the corporation such interest as she may have in the partnership; that she transfer to him the share of stock of the corporation standing in her name, and to the corporation the fourteen shares of stock of the industrial corporation standing in her name; that she account for certain moneys deposited in bank accounts in her name as well as for certain postage stamps and Macy bonds or certificates.
It is the husband's contenton that his wife had no ownership interest in the partnership, and as a consequence, no such interest in the stock of the corporations or in the other property which were acquired with partnership assets. The determination of the respective interests of the husband and wife in the partnership will be dispositive of their rights in the stock of the corporations.
There was voluminous testimony regarding this couple, their activities and affairs from their marriage to the time the partnership commenced business, but little of it need be repeated here. They were married in December, 1931, when he was 21 and she 19 years of age; he was a traveling salesman, without a home; they traveled together from place to place taking their few possessions with them in an automobile; later they settled in Chicago where he was employed; she helped him in a small way, doing some clerical work at home for him; they were both money-minded and tried in various ways to get ahead financially but they had no more than enough for a mere existence until 1939, when he got employment in New York with the firm of Kieley & Mueller, Inc.; he continued with this concern for about four years on a salary and profit sharing arrangement; apparently there was not much profit in the beginning because as late as January, 1942, they had only about $1,500 in funds; in June, 1942, this rose to approximately $8,500 and during the period from September, 1942, to April, 1943, he received almost $25,000 under the profit sharing arrangement; in fact he was paid $15,000 in settlement, after his employment had terminated; his savings were deposited in a joint account *478 in the name of him and his wife in a Chicago bank until June, 1942; thereafter deposits were made in several accounts in banks in this State; there were accounts, in his sole name, in her sole name, in a joint account from which either might draw and in a further account in her name from which he was authorized to make withdrawals; on February 25, 1943, a certificate, dated February 20, 1943, to the effect that they were trading as Farris Engineering Company, was filed; and on March 2, 1943, the certificate of incorporation of Farris Engineering Corporation was filed; the industrial corporation was formed later to take and hold title to real estate and it was financed out of partnership funds; on November 30, 1946, the partnership assets were transferred to the corporation in consideration of the assumption by the latter of all the liabilities of the former; from the early part of 1943 to May, 1948, Mrs. Farris participated with her husband on a full-time basis in the business of these concerns; from the time of their marriage until May 13, 1948, there was, so far as the evidence discloses not even a suggestion of any domestic or financial discord or dissension between them, but on the latter day they parted under sudden and dramatic circumstances; they have since lived apart and she has not participated in the conduct of the business of either corporation.
In early 1943, Farris, who was then 32 years old, decided to go into the business of manufacturing valves for sale to the United States for war use; his work with Kieley & Mueller had been in the same line. On February 18, 1943, he opened an account in the Hudson Trust Company in his sole name, trading as Farris Engineering Company, indicating that he intended to do business as an individual. Then he decided to form the corporation, which his attorney caused to be done, through the Corporation Trust Company. At about the same time he was advised by his accountant, who had assisted him in negotiating the settlement with Kieley & Mueller, that it would be "income tax wise" to form a partnership with his wife. And so it happened that the partnership commenced manufacturing operations while the corporation *479 remained dormant, so to speak, until the end of December, 1943, when it was decided to utilize it as a tax saving device. On December 29, 1943, Farris as president of the corporation wrote a letter to the partnership regarding charges to be made against the latter for engineering services rendered by the former "during the past year and to be rendered in the future" and fixing such charges as a percentage of the net sales of the partnership. As requested in the letter, on January 2, 1944, Farris and his wife endorsed thereon the approval of the partnership. The corporation was paid, retroactively and thereafter, substantial sums of money for services which, in my view of the evidence were not performed. In the meantime the industrial company was formed, and with funds furnished by the partnership, acquired title to real property which was used by the latter in its business.
The proofs are clear that the funds, $28,298.51, that were used to start the Farris enterprises had their origin in his earnings, but they reposed for some time in bank accounts which were in her name alone or jointly with his. It is difficult to understand the movement of these funds from one account to another without the aid of the graph which is D 7 in evidence, and more difficult to understand the reason therefor. It will be noted that $10,000 passed from the joint account of Mr. and Mrs. Farris to the partnership account on February 25, 1943; also that Farris opened an individual account in the Hudson Trust Company on December 1, 1942, with a deposit of $6,000 drawn from a savings account in the name of Mrs. Farris, and that on February 18, 1943, the partnership account was opened with a deposit of $5,875 drawn from his said individual account.
The third paragraph of the pretrial order is as follows:
"3. The defendant Farris admits that the plaintiff had a half interest in the partnership, but contends that the entire business of the partnership was on war work which came to an end with the cessation of hostilities in 1945; that in 1946 the Government renegotiated the contracts with the partnership and made a substantial claim against the partnership and this claim was paid later by the Farris Engineering Corporation; that the Farris Industrial Corporation *480 was formed from funds of the partnership and that by agreement with the plaintiff the stock of that company was distributed as follows: 14 shares to the plaintiff; 14 shares to the defendant Farris and 2 shares to the latter's nominee. The defendant Farris also contends that 10 shares of the Farris Engineering Corporation were issued; 9 of them to the defendant Farris and one to plaintiff and that this was done with her consent. The defendant states that plaintiff after the partnership assets were turned over to the corporation continued as an officer of the corporation and received a salary of $20,000 a year from that time for about one year, until May 1948 when she separated from her husband. From that date she rendered no service to the Engineering Corporation and had received no compensation or dividends from it. The defendant in its counterclaim asks that plaintiff execute proper instruments to transfer her interest in the partnership and in the two defendant corporations to the Farris Engineering Corporation and that she account to the defendant for certain moneys, bonds and a certain stamp collection."
Farris now argues that the admission in the pretrial order that his wife had a half interest in the partnership referred only to the income but not to the ownership thereof, and in support of his contention relies heavily on the following letter, which is exhibit D 2:
 "March 10th 1943
 Mrs. Louise M. Farris
 675 Grand Avenue
 Ridgefield, New Jersey:
Dear Louise,
This letter will confirm the fact that you and I are co-partners doing business under the name of Farris Engineering Company at 675 Grand Avenue, Ridgefield, New Jersey. We are both to be paid a fair and reasonable salary for our services.
Our liability for co-partnership debts is to be in the same proportion as our respective investments. In the event of the liquidation of said co-partnership, our distributive shares shall be equal to the proportionate share of our respective investments.
Your signature under the words "Agreed and Accepted," will constitute our agreement.
 Very truly yours,
 Victor W. Farris
 Agreed and Accepted
 Louise Farris"
There was little formality between the husband and wife as they started the new enterprise in 1943. The incorporators *481 of the corporation were furnished by the Corporation Trust Company and they held an organization meeting on March 2, 1943, at which Farris, his wife and the latter's father Charles J. Thomas were elected directors. Upon the adjournment of this meeting the ten issued shares had been assigned as follows: eight shares to Victor W. Farris and one share each to Louise Farris and Charles J. Thomas. On March 10, 1943, Mr. and Mrs. Farris held the first directors' meeting and elected themselves as the only officers of the corporation. Thereafter, according to the minute book, no stockholders meeting was held and only two directors' meetings until after Mrs. Farris' departure in May, 1948; and these meetings were called to pass resolutions dealing with banking relations and charges to the partnership for engineering services. It is noted that no stock certificate of the corporation bears the required signature of Mrs. Farris. Certificate number 1 for 8 shares is in the stock certificate book; it is dated March 2, 1943, runs to Victor W. Farris and is complete on its face except for the signature of Mrs. Farris. Certificate number 2 for 1 share bears the same date, is in the name of Mrs. Farris and is likewise complete on its face except for her signature. This was in the stock certificate book until it was delivered to the sequestrator in this action. Certificate number 3 is completely blank except for the printed matter and the signature of Charles J. Thomas beneath the assignment form on the reverse side. The stub of this certificate is blank except that it bears the notation: void. Certificate number 4 for 1 share in the name of Charles J. Thomas is dated March 2, 1943, and is complete on its face except for the signature of Mrs. Farris. On the reverse side there is an assignment of this certificate by Thomas to Farris. Entries on the stubs indicate that on July 6, 1948, seven shares were issued to Victor W. Farris and one each to Emil M. Farris and Edmond J. Farris. The explanation with respect to certificate number 3 is that it was mailed to Mr. Thomas for endorsement; that when it did not get back to the certificate book in due course, it was arranged to have him endorse certificate number 4; thereafter *482 certificate number 3 came to light and it was placed in the book.
As regards the partnership, the only evidence of formality at or near the time of its inception is exhibit D 2. This writing purports to limit the liability of the partners for debts and to fix their shares on liquidation in proportion to their respective investments. What did each invest? In the pretrial deposition of Farris, there appear these questions and answers:
"Q. Going back to the time of the partnership, Mr. Farris, how much money did you invest in the partnership, if any, in dollars and cents?

MR. OKIN: At what time?
Q. At the time of the formation of the partnership? A. This partnership was formed with approximately $28,000.00 of my money; all of my money at the start of this partnership.
Q. It was deposited to the partnership account? A. One half was deposited directly by me, and the other half was deposited by Louise Farris with funds made available from me.
Q. So that you each equal one-half  $14,000.00 each? A. That's right."
"Q. And each owned a half interest in the partnership? When I say each, I mean you and Louise Farris? A. There was a partnership formed and the interest was fifty-fifty with the reservation, of course, of the loans I made in furnishing the original capital for this partnership."
The books of the partnership do not show the contributions to capital of each partner. The capital account was credited with the paid-in funds of $28,298.51. The partners had equal drawing accounts and on the income tax returns of the partnership they shared profits and losses equally. On one such return where a profit was shown on the sale of $75,000 in Government bonds, each was reported as being credited with one-half thereof. Throughout the life of the partnership nothing was ever said or done by either Mr. or Mrs. Farris to indicate other than that she was an equal partner.
We are confronted here with the not uncommon situation of a husband and wife, in happy days, dealing between themselves in money and property as though the property of one *483 belonged to both; money was transferred from one bank account to another without apparent concern as to the legal effect thereof; close study of the evidence does not in general establish the intention of the parties in their various dealings with each other; there is an exception in the formation of the partnership with the definite purpose of minimizing their income taxes, and the signing of the exhibit D 2, drawn by their lawyer to evidence a partnership relation, but even that paper failed to set forth what their respective interests were; and now that their marriage is wrecked and they are utterly antagonistic, there are contentions that are difficult to prove. But we are aided in the determination of the main issue by the application of presumptions well established in our cases. In Strong v. Strong, 134 N.J. Eq. 513, Vice-Chancellor Jayne considered a case where a wife acquired title to property for consideration paid by her husband and the question, whether beneficial title was in him, arose after they became estranged. In his opinion he referred to the numerous authorities which need not be repeated here and concluded that the presumption of gift or settlement to the wife had not been successfully rebutted. We think it apropos to quote from this case, as follows:
"The presumption of a gift or settlement may be rebutted by circumstances precedent to, or contemporaneous with the transaction, or so proximately contemporaneous as to be part of the res gestae. It is elementary that a resulting trust arises by operation of law from contemporaneous circumstances which give the legal and equitable titles different directions at the instant the deed is taken and the legal title is vested in the grantee. Krauth v. Thiele, 45 N.J. Eq. 407; 18 Atl. Rep. 351. The circumstance that Mr. Strong now believes that his wife has since been guilty of infidelity, even if the supposition is justifiable, does not eradicate the legal presumption of the donative intent. Indeed, in more extreme cases, where the adultery of the wife and the occupancy of the property by her and her paramour have been established, the presumption of the gift has predominated. Vide, Lister v. Lister, supra; Beck v. Beck, supra."
In its affirmance of this decision (136 N.J. Eq. 103), the Court of Errors and Appeals said:
*484 "The cases on the general subject-matter were assembled by Vice-Chancellor Leaming in Herbert v. Alvord, 75 N.J. Eq. 428, and the pertinent principle was there epitomized as follows:
`Where one purchases property and pays the consideration therefor, and the conveyance of the legal title is taken in the name of a stranger, a trust will be presumed to have arisen in virtue of the transaction in favor of the person who has paid the consideration. This principle results from the equitable theory that the consideration draws to it the beneficial ownership. Where, however, the conveyance is not made to a stranger, but is made to a person whom the purchaser is under a legal obligation to maintain, such as a wife or child of the person who pays the price, the good consideration of blood or love and affection will support the conveyance and no resulting trust will arise from the payment of the consideration. In such cases the presumption is that a settlement or advancement was intended. See 3 Pom. Eq. Jur., sections 981, 1039. But these presumptions may be overcome by evidence disclosing a contrary intention. Repeated adjudications in this state have defined the principles already stated and have also defined the proofs necessary to overthrow a presumed or resulting trust or to rebut the presumption of a gift or settlement in the case of a child or wife. The proofs, except as to acts or declarations of the party to be charged, must be of facts antecedent to or contemporaneous with the purchase, or so immediately afterwards as to form a part of the res gestae. The proofs must also be convincing and leave no reasonable doubt as to the intention of the party.'"
We believe that this principle applies here and that the evidence offered by Farris has failed to overcome the presumption of gift or settlement. While the desire to minimize income taxes suggested the formation of a partnership, with his wife as an equal partner, we must presume that his action was bona fide and not a fraud upon the United States.
The Uniform Partnership Act, R.S. 42:1-7, provides that receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business. And a necessary corollary is that the receipt of half the profits is like evidence of a half ownership of the business.
It is concluded that plaintiff was the owner of a half interest in the partnership throughout the period of its existence.
It follows, therefore, that Mrs. Farris is entitled to an equal share with her husband in all of the issued stock of the corporations, inasmuch as all the capital of these was furnished by the partnership.
*485 The proofs persuade me that the postage stamps and the Macy bonds or certificates were purchased with the funds of the partnership and Mrs. Farris must account for such of these as she took with her in May, 1948.
Farris has not shown that he had any interest in the accounts in the Tenafly Trust Co. which in May, 1948, stood in his wife's name. His contention that she held these in trust for him has not been established.
On June 29, 1948, Farris addressed the following letter to the corporation:
 "Farris Engineering Corp.,
 400 Commercial Avenue,
 Palisades Park, New Jersey.
Gentlemen:
I, the undersigned, as owner of more than the majority of the entire capital stock of Farris Engineering Corp. now issued, outstanding and entitled to vote, request that a special meeting of the stockholders of this corporation be called immediately for the following purposes:
1. To nominate and elect two Directors to fill two vacancies on the Board of Directors of said corporation to carry on, with the undersigned as third director, the corporation's affairs until the next annual meeting on the third Tuesday in March, 1949.
2. To carry on and transact such other business as may be brought before the meeting.
 Victor W. Farris.
Dated: June 29, 1948."
The minute book of the corporation contains this entry:

"MINUTES OF MEETING OF BOARD OF DIRECTORS.

* * *
A regular Meeting of the Board of Directors was held on February 25, 1949 at eleven o'clock in the forenoon at Room No. 10, 595 Broad Avenue in the Borough of Ridgefield, Bergen County, New Jersey, with all Directors being present.
Following discussion of the matter of compensation for Victor W. Farris, President of the corporation, it was upon motion duly made and seconded,
UNANIMOUSLY RESOLVED that the compensation of Victor W. Farris be and it is hereby raised from the sum of $20,000.00 to the sum of $40,000.00 for the fiscal year, March 1, 1948 to February 28, 1949, and which sum was deemed commensurate with the value of said services rendered during said period."
*486 In effect Farris doubled his salary and made it retroactive for a period of one year. In addition to this, he has been drawing a salary of $5,200 per annum from the industrial corporation. Whether or not the salaries received by him are in excess of the fair and reasonable value of his services cannot be determined at this time. There has been no proof as to such value. Disposition of this issue will therefore be reserved until such proofs have been taken. See Worley v. Dunkle, 2 N.J. Super. 161, and cases therein cited.