[No. 22949.   Department One.   May 20, 1931.]

P. B. HOLDRIDGE, *Appellant*, v. LLOYD GARRETSON
COMPANY *et al.*, *Respondents.*[1]

[1]Reported in 299 Pac. 657.

*Grady & Velikanje,* for appellant.
*Rigg, Brown & Halverson,* for respondents.

MAIN, J.—This action was brought by a minority stockholder of a corporation to recover, on behalf of the corporation, sums of money which he claims the majority of the trustees and stockholders illegally paid to themselves, as officers, for back salaries. The cause came on for trial before the court without a jury, and at the conclusion of the plaintiff's case the defendants moved for a nonsuit, which motion was sustained, and from the judgment rendered dismissing the action, the plaintiff appeals.

The Lloyd Garretson Company, a corporation, was organized during the year 1919, with a capital stock of twenty-five thousand dollars, which was divided into twenty-five thousand shares with a par value of one dollar per share. The capital stock was subscribed for as follows: Lloyd Garretson, ten thousand shares; L. F. Sainsbury, five thousand shares; P. B. Holdridge, five thousand shares; and G. C. Gervais, five thousand shares. These four stockholders became trustees. The by-laws of the corporation provided that the business

of the corporation should be managed by a board of four trustees, but that the number thereof might at any time, on vote of a majority of the stockholders, be increased. There was no provision in the by-laws for decreasing the number of trustees. Sometime prior to June 24, 1925, G. C. Gervais sold her stock, consisting of five thousand shares, to Garretson, and ceased to be a trustee or stockholder. Miss Gervais' place as a member of the board of trustees was not at any time filled, and the by-laws were not amended.

On the date mentioned, a meeting was held by the trustees and stockholders, which apparently was the annual meeting, and the capital stock of the corporation was increased to seventy-five thousand shares of the par value of one dollar per share. Of the increase, Garretson took thirty thousand shares, Sainsbury ten thousand shares, and Holdridge ten thousand shares. The stock was not paid for at the time, but was charged upon the books of the corporation to the respective subscribers. At this time, it appeared that the corporation's books showed a surplus and undivided profits of $23,918.91. At the meeting of June 24, a resolution was passed reciting the amount of the surplus and undivided profits, and providing that the same should be paid to the several stockholders "in proportion to the number of shares of stock held by each, and that such payment be made as soon as is reasonably convenient in the conduct of said business." At the same meeting, it was provided that, for the increased stock, so far as not paid for by the division of the sum mentioned, each of the subscribers should give his promissory note.

May 31, 1927, which was the close of the fiscal year, two of the trustees and stockholders, Garretson and Sainsbury, held a meeting and voted back salaries in the sum of six thousand dollars to Garretson and two

thousand dollars to Sainsbury, which amounts were credited upon their respective notes. May 28, 1928, another meeting was held, Garretson and Sainsbury only being present. Nothing appears to have been done at this meeting, other than to approve of the minutes of the meeting held one year before. May 23, 1929, at a meeting at which they alone were present, Garretson and Sainsbury voted salaries for the year ending May 31, 1929, in the sum of six thousand dollars to Garretson and four thousand four hundred dollars to Sainsbury; the amount voted to Sainsbury including the salary of two hundred dollars per month which he was receiving as general manager of the company, and which had been paid from time to time during the previous year. The amounts directed at this meeting to be paid as salary were likewise credited on the notes which were taken up and canceled. Holdridge was subsequently required to pay in cash the balance due on his note.

From the year 1925 to the time of trial, Garretson was at all times president of the corporation; Sainsbury was secretary, treasurer and general manager, and had immediate charge of the business. For some years prior to 1925, Sainsbury had been paid, as manager, a salary of one hundred fifty dollars per month. Prior to the year 1925, Garretson owned two-fifths of the capital stock, and each of the other stockholders one-fifth. After he purchased the stock of Miss Gervais, Garretson owned three-fifths, Holdridge one-fifth, and Sainsbury one-fifth of the capital stock. At the meetings held in 1927 and 1929, the sums voted as salaries were in amounts in exact proportion to the amount of stock held by Garretson and Sainsbury; no salary being voted at either meeting to Holdridge, nor, as above stated, was he present at either of these meetings. Holdridge brings the present action as a minor-

ity stockholder to recover on behalf of the corporation the salaries which Garretson and Sainsbury voted to themselves in 1927 and 1929.

■ Upon the trial, the appellant called Sainsbury as a witness, and, in addition to other things, sought to interrogate him as to whether the increasing of the stock of the corporation and the dividing of the surplus and profits was not done for the purpose of avoiding the Federal income tax, to which line of questioning an objection was made and sustained. This ruling of the court presents the first question to be determined. The inquiry sought to be made went directly to the purpose for which the sums voted were intended, the testimony was material, and the evidence should have been admitted. Later, when the appellant was on the stand, he testified along the same line without objection, and the question is not now of much importance upon this appeal; but inasmuch as a new trial must be ordered, it seems best to dispose of the matter at this time.

■ The next question is whether Garretson and Sainsbury, acting as trustees, had the right to vote themselves back salaries. In *Wonderful Group Mining Co. v. Rand,* 111 Wash. 557, 191 Pac. 631, it was held that a board of trustees of a corporation consisting of five members could not, by passing three resolutions, vote compensation for past services to four of their members, although one resolution was for a salary as secretary, one for a salary as treasurer, and the other for legal services rendered by two members of the board, because all but one member of the board were pecuniarily interested in the general plan. To state it otherwise, it was held that a majority of the board of trustees had no right to vote themselves back salaries.

In *Tefft v. Schaefer,* 136 Wash. 302, 239 Pac. 837, 1119, the action was by a minority stockholder to re-

cover salaries which two members of the board of trustees voted to one for services as an officer in the corporation. The number of trustees was three, and there were but the three stockholders. In that case, there were two items; one voted in January, 1913, when the plaintiff, the minority stockholder, was present and voted against fixing the salary of the officer at two hundred fifty dollars per month, which salary for a period of seven years or more, with the knowledge of the plaintiff, was paid; the other voted in October, 1919, at a meeting of the trustees at which the plaintiff was not present, when the salary of the officer was increased to five thousand dollars per year. Sometime thereafter the action was brought by the minority stockholders to recover all of the salary at two hundred fifty dollars per month from the date it was voted, and all of the salary at five thousand dollars a year from the date it was voted, with the exception of one hundred dollars per month, which had been the salary prior to the time it was raised to two hundred fifty dollars per month, and which the minority stockholder approved. It was there held that all salary in excess of two hundred fifty dollars per month paid under the resolution adopted in 1919, when the salary was raised to five thousand dollars a year, could be recovered, but recovery was denied as to the two hundred fifty dollars per month because the minority stockholder, with knowledge that it was voted and was being paid, had acquiesced therein for a long period of time.

It is said that the case last cited and the previous one of *Wonderful Group Mining Co. v. Rand, supra,* are not in entire harmony, but we see no discord between the two cases. As to the five thousand dollar item in the *Tefft* case, the holding is in exact accord with the other case. As to the two hundred fifty dollar salary, as already stated, recovery was denied be-

cause the same was paid with knowledge and acquiescence of the complaining stockholder during a long period of time, which distinguishes it from the holding in the prior case.

The next question is this: Assuming, without deciding, that the majority stockholders had a right to ratify their action as members of the board of trustees in voting salaries to themselves, were the sums voted in 1927 and 1929 in fact salaries which were reasonable and just compensation for services which had been previously rendered?

It appears from the evidence now before us that Sainsbury was manager of the corporation, which was engaged in the business of buying and selling fruit; that he did the buying and selling, shipping and collecting, and had general charge and management of the corporation's affairs. Garretson was president of the corporation, and was frequently, probably daily, consulted by Sainsbury, but spent very little time at the place of business of the corporation, his time being largely devoted to other extensive interests in Yakima county. When the corporation needed to borrow money, it was necessary that Garretson loan it his credit.

The sums voted as salaries were in exact proportion to the amount of stock owned by Garretson and Sainsbury; in other words, Garretson, with the larger holding of stock (three-fifths), devoting little attention to the business, was voted six thousand dollars as back salary in each of the years mentioned, and Sainsbury, with one-fifth of the capital stock, was voted two thousand dollars, in addition to the two hundred dollars a month which he was regularly paid.

The evidence fails to show that the salaries voted were intended as reasonable and just compensation for services rendered, as claimed by respondents. In fact,

8

the irresistible inference is that what were called "salaries" were not intended as compensation for services performed on behalf of the corporation. It is clear that a majority of the stockholders cannot ratify the action of a majority of the board of trustees voting themselves sums out of the profits of the corporation, and at the same time denying to the minority stockholder his proportionate share. In *Miner v. Belle Isle Ice Co.,* 93 Mich. 97, 53 N. W. 218, it was said:

"Where the majority of stock of a corporation was held by one family who voted away the corporate profits for salaries, the minority may call upon a court of equity to remedy the fraud."

In *Camden Land Co. v. Lewis,* 101 Me. 78, 63 Atl. 523, it is said:

"There is no doubt that the arm of the court in equity is long enough to reach and undo any such ratification which appears to be fraudulent as against the minority stockholders, and that the court will interfere when such action by the stockholders is so detrimental to the interests of the corporation itself as to lead to the necessary inference that the interests of the majority stockholders lie wholly outside of and in opposition to the interests of the corporation and of the minority of the shareholders, and that their action is a wanton or fraudulent destruction of the rights of such minority."

In the case of *Russell v. Patterson Co.,* 232 Pa. St. 113, 81 Atl. 136, it was held that the majority stockholders could subsequently ratify the action of a majority of the board of trustees in voting salaries to themselves as officers when such salaries were reasonable and just compensation for the services rendered. There was presented in that case a very different situation from that which is before us upon this appeal.

The next question is whether the appellant, by reason of the fact that he participated in, approved

of, and was a beneficiary of the division of profits in 1925, is estopped from now complaining as a minority stockholder. Appellant was present neither at the meeting held in 1927 nor at the meeting in 1929; he received no benefit as a result of such meetings, and at no time approved the action thereof. The action of the majority of stockholders, confirming and ratifying their action as members of the board of trustees, was not binding upon appellant by way of estoppel. In *Continental Securities Co. v. Belmont,* 206 N. Y. 7, 99 N. E. 138, it was said:

"In any case where action is taken by stockholders confirming and ratifying a fraud and misapplication of the funds of the corporation by the directors or others the action is binding only by way of estoppel upon such stockholders as vote in favor of such approval."

As already indicated, we express no opinion here upon whether a majority of the stockholders can ratify their previous action as members of the board of trustees in voting themselves back salaries as officers, where the salaries are reasonable and just compensation for services rendered, because that question is not involved upon this appeal. Neither do we express any opinion upon the question as to whether the corporation can function with only two trustees present at a meeting.

The judgment will be reversed and the cause remanded, with direction to the superior court to grant a new trial.

TOLMAN, C. J., MITCHELL, and BEALS, JJ., concur.

HOLCOMB, J., concurs in the result.