249 So.2d 821

**Raymond TYLER, as Administrator of the Estate of Gerald Tyler, Deceased**

v.

**Wyman KING et al.**

**8 Div. 404.**

Supreme Court of Alabama.

June 24, 1971.

Camp, Page, Williams & Spurrier, Huntsville, for appellee Wyman King.

Dixon, Wooten, Boyett & McCrary, Talladega, and Simmons, Torbert & Cardwell, Gadsden, for appellee Elma C. Scott.

Barnett, Tingle & Noble, Birmingham, for appellant.

MADDOX, Justice.

Appellant, Raymond Tyler, as administrator of the estate of Gerald Tyler, brought suit in the Marshall County Circuit Court for the latter's wrongful death against Wyman King, doing business as King Lumber Co., and against Elma C. Scott, doing business as Scaffold Rental Co.

At the conclusion of the plaintiff's case, the court granted the defendant's motion to exclude the evidence. From the granting of this motion to exclude, plaintiff appealed and assigns as error solely the court's action in this regard.

The facts are not seriously disputed. W. E. King contracted with one Wyman King to construct a commercial building on property owned by W. E. King in Arab, Alabama. Wyman King, as general contractor, made a subcontract with Raymond Tyler, the brother of the deceased Gerald Tyler, for the laying of the brick in the construction of the building. The testimony appears to indicate that Raymond Tyler was employed as a masonry foreman with Hails Construction Co. of Huntsville at the time and got permission from Hails' foreman to borrow a brick conveyor belt which apparently Hails had rented from Elma C. Scott, doing business as Scaffold Rental Co. Raymond carried this brick conveyor belt to Arab to be used on the job there.

The deceased, Gerald Tyler, had contracted with his brother, Raymond, to clean the bricks. On September 4, 1964, Gerald was walking up this conveyor belt when it collapsed, causing him to fall to the ground. As a result of the injuries he received in the fall, Gerald died on September 13, 1964.

Evidence tended to show that the deceased had used the conveyor belt to get to the top of the building on three previous occasions and that other workmen employed by other subcontractors had also used the conveyor belt to get to the top of the building. According to the testimony, the belt fell because some bolts were broken where the stabilizer had fallen out from under the conveyor belt. There was some testimony that the general contractor, Wyman King, was on the job site when the stabilizer had fallen previously. Raymond Tyler testified that he had brought the conveyor belt to the job site; that he was present on other occasions when his brother had walked up the conveyor belt; and that he did not warn his brother that it was dangerous even though he knew it was dangerous.

There was no testimony mentioning Elma C. Scott or Scaffold Rental Co. in connection with the conveyor belt in any manner.

After extensive pleading, which covers the first 154 pages of the transcript, issue was joined on Count G of plaintiff's amended complaint. Summarized, plaintiff claimed that Wyman King, as the general contractor, had assumed possession and control of the premises where plaintiff's intestate was injured; that Elma C. Scott, doing business as Scaffold Rental Co., had rented the conveyor belt to Hails Construction Co.; that Scott knew or should have known that the conveyor belt was dangerous at the time she rented it to Hails Construction Co.; and that Hails still had possession of the conveyor belt while it was being used by Raymond Tyler at the Arab job site. Plaintiff claimed that the general contractor, King, knew or should have

known that the conveyor belt was being used on the premises as a ladder, and that King knew or should have known that the conveyor belt was dangerous and that the deceased, Gerald Tyler, had no knowledge and could not have discovered from a reasonable inspection, the dangerous defect which existed in the stabilizer of the conveyor belt.

■ It is axiomatic that actionable negligence requires a duty owed by the defendant to the person injured, a breach of that duty which proximately results in the injury. Appellant invokes the "scintilla rule"[1] and claims that enough evidence was presented to allow the question of negligence to go to the jury.

■ We agree with the trial court that the plaintiff failed to make out a prima facie case. Of course, the granting of a motion to exclude the evidence is never proper in this jurisdiction, but a trial court will not be put in error in granting a motion to exclude the evidence, even though procedurally improper, where the plaintiff's evidence does not make out a prima facie case. Jack Cole v. Hays, 281 Ala. 118, 199 So.2d 659 (1967), and cases therein cited.

Appellant contends that there was a scintilla of evidence to show that Wyman King, as the general contractor, failed to use reasonable care and diligence in keeping the premises in a safe condition for persons coming thereon by his invitation, expressed or implied, for the transaction of business, or for any other purpose beneficial to him. He cites Day & Sachs v. Travelers' Insurance Co., 223 Ala. 558, 137 So. 409 (1931); Southern Minerals Co., Inc. v. Barrett, 281 Ala. 76, 119 So.2d 87 (1967); Daniel Construction Co. v. Pierce,

270 Ala. 522, 120 So.2d 381 (1960), to support his contention.

Even assuming that the deceased was an invitee,[2] and even assuming that Wyman King, as the general contractor, had full charge and control of the building, there is no evidence that King had charge or control of the conveyor belt brought onto the premises by Raymond Tyler, his subcontractor. In fact, the only evidence is that Raymond Tyler borrowed the machine from Hails, brought it onto the job site and knew of defects in the machine and failed to warn his deceased brother. In Daniel Construction Co. v. Pierce, supra, the general contractor was to furnish and erect the scaffolding. There, this Court specifically pointed out that when one undertakes to furnish an appliance for use of the employee of another, he is deemed to have assumed a duty to furnish a proper and safe appliance. Daniel Construction Co. v. Pierce is clearly distinguishable. In the opinion there, this Court held:

"As we see it, we do not have here a case where an employee of an independent subcontractor is injured by an unsafe appliance furnished by such subcontractor. Instead, the general contractor undertook to furnish all of the scaffolding for use by the subcontractor and his employees. And there is evidence from which the jury could find that appellant also undertook the moving and maintaining of the scaffolding where Royce fell. In this situation, the applicable principle is thus stated in 35 Am.Jur., Master and Servant, § 529, pp. 957–958:

" 'While, as a general rule, injury which has been occasioned by an instrumentality is not chargeable to one who has parted with possession of and con-

---

1. If there is a mere gleam, glimmer, spark, the least particle, the smallest trace—a scintilla afforded from the evidence to sustain the issue, the trial court is duty bound to submit the question to the jury. South Highlands Infirmary v. Camp, 279 Ala. 1, 180 So.2d 904 (1965).

2. The testimony indicated that Raymond Tyler contracted with his brother for the cleaning of the brick based upon a piece work basis. There was testimony that the widow of Gerald Tyler received Workmen's Compensation benefits from Raymond Tyler based upon the employer-employee relationship between Raymond Tyler and Gerald Tyler.

**166**

trol over the machine or appliance, a person who has undertaken to furnish an appliance for the use of the employee of another is deemed to have assumed a duty to furnish a proper and safe appliance; and a negligent performance of such a duty, resulting in injuries to one engaged in doing the work or lawfully using the appliance, imposes a liability on the person so furnishing the same for injuries sustained in consequence of such negligence. The obligation does not depend on a contractual relation between the person injured and the person whose negligence causes the injury, but on a failure to perform a duty assumed by one which results in injury to another. In order that a recovery may be sustained, it must appear, of course, that responsibility for the condition of the offending machine or appliance was chargeable to the defendant.' "

There was absolutely no evidence that the general contractor undertook to furnish the appliance causing the injury and death of Gerald Tyler, and except for the testimony of one witness that the general contractor had been on the job site when the belt had fallen, there is no evidence to show that King had any knowledge that the belt had a tendency to fall. Appellant insists that this testimony that the general contractor had been on the job site when the belt had fallen was sufficient to present a jury question as to whether or not the general contractor knew or should have known that the appliance was dangerous and failed to warn Gerald Tyler about this dangerous condition. We cannot agree.

We also point out that the appliance was designed to convey bricks to workmen and not as an instrumentality for conveying workmen to the top, even though it apparently was used frequently by workmen on this particular job for such purpose.

In Day & Sachs v. Travelers' Insurance Co., supra, the defendants had erected the bar joists over which a plankway was laid for use in trucking stone, and even though the joists were not intended to be so used, this Court pointed out that the evidence there appeared to show that they were so used with the knowledge, acquiescence, and consent of defendants' general superintendent on the job. But even assuming that the general contractor in this case knew the belt was defective and that workmen were using it as a ladder, the defect was not in the premises but in the machine over which the general contractor had no charge or control.

We have examined the evidence in the light most favorable to the plaintiff without regard to any view we may have as to the weight of the evidence. We have allowed such reasonable inferences which the jury could draw, not inferences which we think the more probable. After this examination, we are of the opinion that the plaintiff failed to make out a prima facie case of liability. The judgment of the lower court is therefore due to be affirmed.

Affirmed.

HEFLIN, C. J., and LAWSON, MERRILL and HARWOOD, JJ., concur.