275 So.2d 108

**David W. GOLDMAN**

**v.**

**W. G. JAMESON et al.**

**SC 67.**

Supreme Court of Alabama.

March 22, 1973.

---

Markstein & Morris, and Daniel H. Markstein III, Birmingham, for appellant.

Lanier, Shaver & Herring and John R. Wynn, Huntsville, for appellees.

McCALL, Justice.

This is a stockholders' derivative suit, brought in equity by David W. Goldman, a minority shareholder in and former director of Fabric World, Inc., a corporation, on behalf of himself and the corporation against its remaining six corporate directors. The corporation, which is a rapidly expanding fabric goods retail corporate chain, is also made a party respondent. After the complainant rested his case, the respondents offered no evidence, and submitted upon their amended answer to the bill of complaint and their oral motion to exclude the evidence.

The respondents' oral motion, found in the record, was to exclude the evidence on the grounds (1) that the evidence adduced has been of no sufficient probative force to make a prima facie case, and (2) the absence of any proof that the complainant made demand upon the directors of respondent Fabric World, Inc., that they institute suit on its behalf against the individual respondents. After the motion to exclude was made the court expressed its concern as to whether or not a prima facie case had been made out by the complainant against the respondents and then took the motion under advisement. The chancellor made the further remark that in case he overruled the motion to exclude, he would permit additional testimony on the respondents' behalf and allow complainant the right of rebuttal, thus clearly demonstrating that the submission was grounded on the motion to exclude and the motion to dismiss the case.

After noting that the cause had been submitted on the respondents' "Motion To Exclude Testimony" and "Motion To Dismiss Bill of Complaint," made orally in open court, the court decreed that the law and the evidence in the cause rendered the bill of complaint to be without merit and subject to an order of dismissal. Whereupon, the court dismissed the bill of complaint. From this final decree dismissing the suit the appeal is brought by Goldman.

Substantially, the bill of complaint avers that the complainant Goldman was wrongfully removed from the board of directors of Fabric World, Inc.; that fees paid the directors were in fact disguised dividends based on their stock investments rather than consideration for services rendered; that the individual respondents caused Fabric World, Inc., to pay its officers, respondents Jameson, Edmonsond and McMahan, compensation so excessive as to bear no reasonable relation to the value of their services; that the respondents have wasted corporate assets by leasing and providing for the personal use of its said officers luxury automobiles, hospital insurance, and other fringe benefits; that respondent Jameson has furnished stockholders a balance sheet showing liability for accrued in-

come tax that bears no reasonable relation to taxable income reported by it; that there was a significant discrepancy between the corporate inventory reported on the tax return and that reported to stockholders; that the dissipation of corporate assets in the unprofitable operation of the Greensboro, North Carolina store should be stopped; that the individual respondents have wrongfully caused Fabric World, Inc., to purchase excessive amounts of insurance on the lives of the respondent officers of the corporation; and that the individual respondents have wrongfully caused the corporation to purchase fixtures through the subterfuge of selling them to a lease-back corporation all to the detriment of the corporation.

The primary aspect of the prayer to the bill is that the court ascertain what would have been reasonable compensation and fringe benefits to its officer-directors Jameson, Edmonsond and McMahan for the duration of their employment, and that judgment in favor of Fabric World, Inc., be rendered against said officer-directors for any amount in excess of reasonable compensation.

The contention of the complainant Goldman, the minority stockholder, is that the officer-directors Jameson, Edmonsond and McMahan acting for the board of directors, fixed their own salaries and compensation, in amounts so excessive as to bear no reasonable relation to the value of the services performed by any of them for the corporation. The complainant also contends that the same three officers authorized payment of disguised dividends in the form of director's fees to the respondents, Robins and Pope, all of which were excessive and to the exclusion of dividends to the complainant. These alleged wrongs of management, shareholder Goldman insists, are being carried on at the expense of the minority stockholders in depriving them of dividends, though the complainant was the only stockholder who complained.

The evidence tended to show that the incorporation of Fabric World, Inc., was in October, 1968. It began business in late November of that year. About the end of September or early October, 1968, prior to incorporation, all of the contemplated stockholders, who were also to become directors of Fabric World, Inc., including the complainant Goldman, agreed that whatever Jameson and Edmonsond decided the business could pay, as their officer salaries to start it out, would be agreeable to all the shareholders. Jameson testified that he and Edmonsond with approval of all stockholders, set their salaries based on the business done by the corporation. So, it was left entirely in the discretion of these two officer-directors as to what their salaries as corporate officers were to be. On this authority Jameson and Edmonsond fixed their salaries at $16,133.37, each for the period beginning in November of 1968 through December 3, 1969. In addition they fixed the fees of directors other than corporate officers who received no director fees, first at $150 per meeting, and later at $500 per meeting for Goldman and Robin, and $1000 for Pope who owned twice as much stock as the others and because his knowledge was more valuable to the corporation. Goldman expressed no objection so long as he remained a director. For 1970 and 1971, these same two officer-directors again fixed their compensation, pursuant to authorization by the stockholders given at a meeting held in the fall of 1969, which directors Goldman, Pope, Robins, Edmonsond and Jameson attended. The specific authorization was to pay whatever was fair to the corporation as their salaries. For these two years they fixed their salaries by separately written employment contracts made by themselves with the corporation. By the terms of these contracts, if total sales volume exceeded 2.5 million, Jameson was to be compensated at the rate of $5,000 per month for a total annual salary of $60,000 and Edmonsond at the rate of $3,600 per month, for a total annual salary of $43,000. In 1970, salary drawn down constituted one part of the total annual compensation, while the additional amounts to make up the total $60,000 and

$43,000, respectively, were called bonuses. No such bonuses were paid for 1971 to Jameson and Edmonsond. These contracts also provided that should the total volume of sales exceed five million dollars for 1971, Jameson would be increased to $6,000 per month or $72,000 for 1972, and Edmonsond to $4,200 per month, for a total of $50,400 for 1972. The contracts provided they were revocable only on the vote of the majority of stockholders. Neither the contracts nor the salaries paid thereon were expressly ratified by the directors. There was some question as to whether any one else even knew of their existence.

The respondent, Denton O. McMahan, became a stockholder in Fabric World, Inc., early in 1971 by exchanging his shares in Fabric World of Kentucky for shares in the former corporation. In March, 1971, Jameson and Edmonsond elected McMahan secretary and vice-president, and named him a director of Fabric World, Inc. The three of them, Jameson, Edmonsond and McMahan, together fixed his salary and bonuses, according to McMahan's testimony. For 1971, he received $2,000 a month, or an annual salary of $24,000 with provision for additional compensation of $10,000 payable March 10, 1972, should total sales volume exceed five million dollars in 1971. For 1972, his salary was fixed at $3,000 per month, or $36,000, per year, should total sales volume exceed five million dollars for the year. As will be observed, the compensation of these three officers, Jameson, Edmonsond and McMahan, was based on total volume of sales alone, and while the amount of total sales continued to rise annually— $660,784.89 in 1969, $2,641,377 in 1970, $5,000,000 in 1971, and an estimated $10,000,000 in 1972, the net income for tax purposes was relatively small—in 1969, it was $19,893.77; for 1970, $4,188; for 1971, approximately $26,000. During the same years, profits for expenditures for the purpose of expansion, as for compensation, increased. In 1970 and 1971, $464,000 was reinvested on capital development. Thus, while the corporation has turned large amounts of its profits back into the business, expanding the number of its retail outlets from one to ten, with still further expansion and increased salaries contemplated, no dividends have been paid to its shareholders.

Jameson and Edmonsond own some eighty percent of the shares of stock in Fabric World, Inc., and exercise full control over management and operation of the corporation, claiming their majority stock ownership as their right to do so. It is quite clear from the evidence that what these two stockholders thought ought to be the rule, became the rule, and the assertion of objection was considered by them as antagonism and ground for removal of Goldman as a director.

It further appears that all other decisions with respect to calling directors' meetings, fixing their fees, travel expenses, paying employees, expansion of business, and the method of arriving at year-end inventories were made by Jameson and Edmonsond, participated in by McMahan.

Here is a pertinent extract from Jameson's testimony:

"Q Who negotiated that contract? [Jameson's salary "contract"]

"A The Executive Committee.

"Q Who was—

"A Mr. Edmondson (sic) and myself.

"Q So that you and Edmondson (sic) again fixed your own salary for '71?

"A After stockholder approval for doing so.

"Q When was that obtained?

"A In the meeting of stockholders in 1969.

"Q I'm inquiring now about '71.

"A It's—the authority is in the minutes of the stockholders meeting in the fall of 1969.

"Q So that applies not only to the year '70 but to '71?

"A That's correct.

"Q So, from now on, it is your contention, if I understand your (sic) correctly, for every year you and Edmondson (sic) can draw whatever salary and whatever bonuses you choose without having to obtain any approval from any director, officer or stockholder; is that right?

\* \* \* \* \* \*

"Q Well, tell me what your understanding of the arrangement is?

"A Until revoked by the majority of the stockholders of the corporation.

"Q You and Edmondson (sic) can draw whatever salary and whatever bonus you think is advisable or suitable?

"A Until revoked.

"Q To be revoked by the majority of the stockholders?

"A That's correct.

"Q Don't you and Edmondson (sic) together own considerably more than fifty per cent of the stock of the corporation?

"A Yes, we do.

"Q So, in effect, what you are telling us is that under your arrangement you and Edmondson (sic) can have any salary, any expense account and any bonus you choose to take?

"A The majority of the stockholders in any corporation have the authority to run the corporation."

■ One ground upon which the court may have acted in granting the motion to exclude was that Goldman failed to make demand on the directors to sue on behalf of the corporation. We think this would have been an unsupportable ground upon which to dismiss the cause. The stockholders of Fabric World, Inc., other than the complainant Goldman, who are appellees here, constitute all of its present directors. These six directors, as party respondents to the appellant Goldman's bill, are charged with numerous acts of corporate mismanagement and wrongdoing. In certain instances money recoveries are sought against some of them. Out of the six appellee directors, four are charged with the wrongful removal of the appellant as a corporate director. In this state of affairs, it would have been wholly futile and useless for the appellant to have appealed to the board of directors or to the stockholders to redress the alleged corporate wrongs before instituting his suit. An appropriate answer to appellees' objection on account of the appellant's failure to demand director action may be found in Ellis v. Vandergrift, 173 Ala. 142, 152, 55 So. 781, 784, where the court said:

"\* \* \* No demand or request of the corporate authorities is required to be made, as a condition to suit by the stockholder, where it can be inferred with reasonable certainty that it would be refused, actually or virtually, or where, being the wrongdoers, a majority of the governing body would control the litigation so requested or demanded. \* \* \*" See also, Henry v. Ide, 208 Ala. 33, 93 So. 860.

■ Appellant Goldman complains that the directors have participated in a scheme to collect disguised dividends in the form of directors' fees. The cases are fairly uniform that he cannot now be heard to complain of the fees paid while he was a director and recipient of those fees. He is estopped by his own participation. It has been held that where a plaintiff was an officer-director, who was forced out by majority interests, his suit to recover unreasonable salaries was barred for the portion paid while he was a director, but as to the portion paid after he was forced to resign from active management, the court said "of course, after plaintiff was forced to resign as an officer and employee his status was that of a minority stockholder,

and he was not barred from questioning on behalf of the corporation the compensation thereafter paid to the individual defendants." Ruetz v. Topping, 453 S.W.2d 624, 628 (St.L.Ct.App., Mo.1970).

Similarly in Barrett v. Smith, 185 Minn. 596, 242 N.W. 392 (1932), complaint was made about two annual bonuses voted by the board of directors to a corporate officer. The present plaintiffs, minority stockholders, who had been ousted by the majority interest, had voted for the award of one of the bonuses while they were directors. It was held that there could be no recovery of the bonus for which they had voted, but as to an earlier bonus, it not appearing that they had in any way approved of it, it was proper to order repayment to the corporation.

In Massoth v. Central Bus Corp., 104 Conn. 683, 134 A. 236 (1926), it was held that plaintiffs who had participated in a salary awarding arrangement were estopped insofar as their consent and participation went, but they could, by revoking their consent, shed the estoppel, and, for unauthorized salaries received thereafter, demand an accounting. To the same effect is Holdridge v. Lloyd Garretson Co., 163 Wash. 1, 299 P. 657 (1931).

Therefore, Goldman was not entitled to demand restitution of directors fees prior to August 1971. However, he is not estopped to question the reasonableness of those fees subsequently paid the directors in which he did not participate, for otherwise, a corporate wrong, if the fees be excessive corporate dividends, would continue unabated indefinitely.

The aid of equity is invoked here, not to declare the fees and salaries paid the officers and directors wholly invalid but to require the individual appellees to repay the corporation any amounts by which the fees and compensation paid, may exceed the reasonable value of the services rendered.

The general rule has been stated many times in our former decisions as follows:

"A court of equity has jurisdiction at the suit of a stockholder to correct abuses in the corporate management by the board of directors, whether by way of improperly increasing their own salaries and those of their confederates, either as directors or as officers of the corporation, or by way of appropriating the assets to the payment of their own liabilities whether under the guise of a loan or otherwise. * * *." Glass v. Stamps, 213 Ala. 95, 96, 104 So. 237, 238; Gettinger v. Heaney, 220 Ala. 613, 127 So. 195; First National Bank of Birmingham v. Forman, 230 Ala. 185, 160 So. 109.

Again in Decatur Mineral Land Co. v. Palm, 113 Ala. 531, 537, 21 So. 315, 317, the court said:

" * * * There was a direct conflict between the duty owed by these directors to the stockholders and their selfinterest, and, as is frequently the case under such conditions, the frailty of human nature sacrifices duty to selfinterest. They fixed the salaries at exorbitant prices, and then elected themselves to the offices. * * * A minority stockholder who cannot obtain redress against such a wrong through the board of directors or the stockholders is entitled to the intervention of a court of equity. 1 Mor. Priv. Corp., §§ 508, 518 et seq.; Cook, Stocks & S., § 657, and notes."

This court made the following observation in the case of Smith v. Dunlap, 269 Ala. 97, 101, 111 So.2d 1, 3, which we think appropriate to cite here:

"In the leading case of Rogers v. Hill, 289 U.S. 582, 53 S.Ct. 731, 77 L.Ed. 1385, cited by this Court in Edmonson v. First National Bank of Birmingham, 256 Ala. 449, 55 So.2d 338, the rule was enunciated that where the amount of a bonus

payment to officers of a corporation has no reasonable relation to the value of service for which it is given, it is in reality a gift and the majority stockholders have no power to give away corporate property against the protest of a minority stockholder."

On appeal, the bare question for decision is whether the trial court erred in sustaining the respondents' motion to exclude the complainant's evidence and in dismissing the bill.

The chancellor decreed on the motion that "the law and the evidence in the cause render the Bill of Complaint to be without merit and subject to an order of dismissal." We must presume that the decree was made pursuant to the appellees' said motion, and construe it to mean that the appellant failed to make out a prima facie case entitling him to equitable relief, or that he failed to prove that he made a demand upon the directors before instituting suit.

Ordinarily, the burden falls on the dissenting stockholder to prove that the compensation paid by the corporation to its officers and directors is unreasonable. The burden so cast is to show by the evidence that the salaries and fees are so excessive as to bear no reasonable relation to the value of the services rendered. Reasonableness or unreasonableness of executive compensation is always a question of fact. Smith v. Dunlap, 269 Ala. 97, 111 So.2d 1; Darmana v. New Orleans Stock Yards, Inc., 226 La. 897, 77 So.2d 528; Fletcher Cyclopedia of Corporations, Vol. 5, § 2181, p. 694; 19 Am.Jur.2d, Corporations, § 1412, p. 803.

It has been held though that where the corporate officers fix and vote their own compensation, the burden is on them to prove the reasonablenss of their compensation. In the present case, all of the stockholders, including Goldman, who also were directors of the corporation, voted to allow Jameson and Edmonsond, who owned approximately eighty percent of the stock, authority to fix their salaries at whatever amount they thought was fair and reasonable to the corporation. Notwithstanding the appellant Goldman participated in the voting, we are unwilling to say that he is now estopped to complain that the salaries which the officers fixed for themselves are unreasonable.

Goldman may have agreed to their fixing of the salaries, but he did not imply authority to fix unreasonable salaries. Nor is there testimony that he knew of the amounts paid and acquiesced in them for such a period as to bar his suit to recover them.

In Binz v. St. Louis Hide and Tallow Co., 378 S.W.2d 228, 230 (Mo.App.1964), after noting the holdings of many cases on the point, the court aptly summarized the applicable principle of law as to the burden of proof as follows:

"In suits by stockholders to recover for the corporation, salaries claimed to be excessive and paid to officers, who are also directors, and these officer directors have set their own salaries, or whose votes were necessary to set their own salaries, the burden is upon the director officers to justify their salaries and show the reasonableness thereof."

In Davis v. Thomas & Davis Co., 63 N. J.Eq. 572, 52 A. 717 (1902), a suit to compel three officers and directors to return to the corporation allegedly excessive salaries, the vice chancellor concluded:

" * * * Directors cannot fix the value of their own services to the corporation. Whenever they attempt to do so, and their action is challenged by a stockholder or other interested persons, the burden is upon them to show what they have done to merit payment; and the quantity of compensation to which they are entitled is to be graded, not by the sum voted, but by what they earn. * * *." *Davis* at 574, 52 A. at 718.

The same result was reached in McKey v. Swenson, 232 Mich. 505, 205 N.W. 583 (1925), placing the burden of showing the reasonableness of their salaries on officer-directors, where they, as major shareholders, had ratified their own act in setting the salaries. In accord also is Heise v. Earnshaw Publications, 130 F.Supp. 38 (D. Mass.1955), wherein it was said " * * * If it were just a question of an excessive salary voted in good faith, the burden of proving to what extent it was excessive would be on the plaintiff. * * * I believe a different situation prevails here. Because of the defendants intentional breach of duty it would be possible for me to rule that their entire raise in pay was forfeit. * * * Consequently I think it at least appropriate to place the burden on them [the officers] to justify what they received. * * *"

■ While it may be said that proper corporate form was followed in the delegation of power from the shareholders to the board of directors, and from the board to its executive committee, which was only incidentally also management, we will not be so blinded to the oneness of all these usually distinct entities as to say the officer-directors' actions in fixing their compensation were actually the acts of the corporation itself. Strict adherence to corporate form cannot hide the substance of the transactions. Neither will such adherence to corporate form be allowed to destroy the principle of fiduciary duty, owed by the officer-directors to fix only reasonable compensation for their own services. Carr v. Kimball, 153 App.Div. 825, 139 N.Y.S. 253 (1912); Shera v. Carbon Steel Co., 245 F. 589 (D.W.Va.1917).

Under the evidence offered by the appellant in this case and the law applicable thereto, the burden of proof to show the reasonableness of the fees and salaries was thus cast on the appellees.

Some of the factors commonly considered in determining whether a particular salary or compensation is reasonable or not are set out in the case of Smith v. Dunlap, 269 Ala. 97, 101, 111 So.2d 1, 4, where it is stated:

"* * * It was observed in Gallin v. National City Bank of New York, 152 Misc. 679, 273 N.Y.S. 87, 114; 155 Misc. 880, 281 N.Y.S. 795, that 'To come within the rule of reason the compensation must be in proportion to the executive's ability, services and time devoted to the company, difficulties involved, responsibilities assumed, success achieved, amounts under jurisdiction, corporate earnings, profits and prosperity, increase in volume or quality of business or both and all other relevant facts and circumstances; nor should it be unfair to stockholders in unduly diminishing dividends properly payable.' * * *"

■ Fletcher in his Cyclopedia of Corporations, Vol. 5, § 2133, p. 577, quotes the above with approval and the same work is cited as authority in Ruetz v. Topping, Mo.App., 453 S.W.2d 624, 628, where additional factors are set forth as tests or guides to be considered. That opinion mentions the employee's qualifications; the nature, extent and scope of the employee's work; the size and complexities of the business; a comparison of salaries paid with the gross income and the net income; the prevailing general economic conditions; a comparison of salaries with distributions to stockholders; the prevailing rates of compensation for comparable positions in comparable concerns; the salary policy of taxpayer as to all employees; and in the case of small corporations with a limited number of officers, the amount of compensation paid to the particular employee in previous years.

While the factors set out in the foregoing authorities constitute no hard and fast rule by which to determine the reasonableness of compensation in all cases, they are recognized as appropriate matters to consider, where relevant, as a guide to arrive at what is reasonable compensation.

The order of submission in this case shows that the appellant submitted on his bill, the admissions in the answer, the testimony of the witnesses, and the exhibits. The appellees submitted without resting on the amended answer and the motion to exclude the evidence, reserving in the submission, the right to put on testimony subsequent to ruling by the court on the motion. The appellees' submission therefore was qualified and, in effect, was only on the motion to exclude the appellant's evidence. The question is whether or not the court erred in granting the appellees' motion. The separate and several grounds of the motion, again, were that the appellant's evidence was insufficient to make a prima facie case, and appellant failed to make demand on the directors to institute suit. We have already pointed out, that the bill, in our opinion, contains equity, and that the appellant introduced evidence which was sufficient to make out a prima facie case and to cast the burden on the appellees of proving that the compensation was reasonable. Further, it appeared that a demand on the directors would have been in vain. The appellees offered no evidence.

It is an established rule in this jurisdiction that a motion by the defendant to exclude all of the evidence for the plaintiff after he has rested is improper and condemned in civil cases. Harrison v. Hall, 277 Ala. 90, 167 So.2d 172; Brunson v. Brunson, 278 Ala. 131, 176 So.2d 490; Western Ry. of Alabama v. Brown, 280 Ala. 543, 196 So.2d 392; Lawson v. Garrett, 286 Ala. 125, 237 So.2d 648; Tyler v. King, 287 Ala. 162, 249 So.2d 821. The court will not be put in error for refusing such a motion. Cooper v. Providence Hospital, 272 Ala. 283, 130 So.2d 8; Coward v. McKinney, 277 Ala. 513, 172 So.2d 538. Nor will the court be put in error for granting the motion, if the plaintiff's evidence fails to make out a prima facie case. Marshall v. Marshall, 284 Ala. 512, 226 So.2d 298; Dudley Bros. Lumber Co. v. Long, 268 Ala. 565, 109 So.2d 684; Law-

son v. Garrett, supra; Tyler v. King, supra. In deciding whether or not the plaintiff has made out a case, every conclusion which might reasonably be drawn from the plaintiff's evidence is admitted. 30A C.J.S. Equity § 457, p. 480.

In Bly v. Southern Ry. Co., 183 Va. 162, 171, 31 S.E.2d 564, 568, 172 A.L.R. 584, the court said:

"Upon the defendant's motion to strike the plaintiff's evidence, not only the truth of the plaintiff's evidence must be accepted, but every reasonable inference of fact that can be legitimately drawn therefrom also must be accepted. * * *"

In Marshall v. Marshall, 284 Ala. 512, 226 So.2d 298, at the conclusion of the plaintiff's evidence, the defendant, without resting, moved to exclude the evidence as to the plaintiff on the ground that there was a total lack of an essential element of wantonness. The court granted the motion to exclude. The Supreme Court said:

"In considering the question of whether there was evidence from which the jury could find for the plaintiffs on the wanton count, this Court must view the evidence most favorable to the plaintiffs. Buchanan v. Vaughn, 260 Ala. 482, 71 So.2d 56, and cases cited."

We see no reason why we should apply a different rule in this case from that applied in those cases at law on this proposition.

We think that there was evidence, or at least inferences or tendencies from the evidence, to reasonably support the appellant's suit, and that the state of the record in this case cast the burden of proceeding to show the reasonableness of the compensation on the appellees. The trial court should not, therefore, have excluded the appellant's evidence and dismissed his bill, but should have determined what relief, if any, the appellant was entitled to. For these reasons the trial court erred in its ruling granting the appellees' motion.

The decree of the court is therefore due to be reversed and the cause remanded. It is so ordered.

Reversed and remanded.

HEFLIN, C. J., and COLEMAN, BLOODWORTH and JONES, JJ., concur.