JEROME M. SAX, Plaintiff-Appellant, *v.* SAMUEL W. SAX *et al.*, Ex'rs of the Last Will and Testament of George D. Sax, Deceased, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 62548

Opinion filed April 21, 1977.—Rehearing denied May 19, 1977.

Russell J. Topper, of Chicago, for appellant.

Ralph A. Mantynband, Selwyn Zun, Robert W. Gettleman, and Mark R. Van Ausdal, all of Chicago (Arvey, Hodes, Costello & Burman, and D'Ancona, Pflaum, Wyatt & Riskind, of counsel), for appellees.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The trial court dismissed a stockholder's suit brought by the plaintiff on behalf of the corporate defendant against the individual defendants on the grounds that plaintiff was guilty of "unclean hands." We find that while the plaintiff technically had a right to prosecute this action, the trial court under the unique circumstances present here did not abuse its discretion in dismissing his claims. We hold, however, that under the particular circumstances the other stockholders should have been given notice and an opportunity to intervene.

The nominal plaintiff, Jerome M. Sax (hereinafter called Jerome), was, from about 1956 to 1965, an executive vice president and member of the board of directors of Exchange National Bank. He is also a stockholder. The defendants, George and Samuel Sax, together controlled over 50% of the common stock of Exchange National Bank. George, until his death in 1974, was the chairman of the board of directors of the bank; Samuel was a director and the president of the bank.

On October 29, 1965, Jerome was indicted by a Federal grand jury on charges of misconduct in the discharge of his duties as a bank officer in certain loan dealings with the Kitzers. When the Kitzers, who were also indicted, were acquitted, the charges against Jerome and certain other persons were dismissed. At the time of his indictment, Jerome was suspended from his position by the bank and, apparently, despite the dismissal of the charges, has never been reinstated.

Sometime after the indictment was dismissed Jerome filed a suit to recover his back salary and the attorney's fees and other expenses incurred in his successful defense of the criminal charges.[1] In 1970 (complaint amended in 1972) Jerome filed the derivative action against the two Saxes with Exchange as the nominal defendant. He joined to this action, in other counts, his claims against the bank and also one against the Saxes for tortious interference with his employment relationship. The individual action previously filed was thereupon dismissed at his request without prejudice.

The basic charges Jerome made on behalf of the stockholders against the two Saxes were:

1. The payment of excessive amounts to George for fees, salary, etc. from 1969 on when he was too ill due to heart disease to perform his duties.

2. The misapplying of bank funds by payment in 1970 for settlement of the claims of the receivers of American Allied Insurance Company and Bell Mutual Casualty Company and Bell Casualty Company arising out of the Kitzer transactions. Jerome alleged that the liability was an individual one of the Saxes arising

[1] It was apparently contended the bank usually paid such expenses.

out of their improper conduct, specifically involving various loans and misrepresentations occurring between 1961 and 1965.

3. The negligent and improper making of an illegal loan to George Liederman, who was a secret owner with George Sax, of the Sherry Hotel, such loan first being made in 1964 but being enlarged over seven years, and the failure to collect any interest on it.

4. Causing the loss in 1968 of $112,279.33 as a result of defaulted bank loans made to Marvin Hornstein, a nephew of George Sax, such loans being illegal as excessive, and improperly made to a member of the defendant's family with the knowledge Hornstein could not repay them.

On April 24, 1975, the trial court, on the defendants' motion, dismissed the derivative action without prejudice on the grounds that Jerome had unclean hands, was an improper person to represent the stockholders and there was a want of equity. The court also found that there was no reason to delay appeal.

The defendants on appeal have attempted to assert that some of the claims were barred by laches. The trial court, however, properly did not find the claims to be so barred; indeed, it could not, since, while the defendants raised the defense of laches in their answer, they have never alleged that they were prejudiced by any delay in bringing the action. Prejudice is a necessary element to the defense of laches. 13 Fletcher, Cyclopedia of Corporations § 5875 (1970).

While it would appear from the report of proceedings that the judge's ruling of unclean hands and improper representations was in fact limited to a finding that Jerome had participated in the improper conduct and therefore could not bring the action, the defendants on appeal have argued that the ruling was proper because:

1. Jerome participated in the action complained of.

2. Jerome brought the derivative action to coerce the defendants (including the bank) into settling the other claims.

3. Jerome, by his apparent willingness to dismiss the derivative action if the other claims were settled has shown that he does not adequately represent the other stockholders.

4. Jerome, because of unspecified conduct, comes into court with unclean hands.

## I.

■■■ It would appear that technically Jerome was entitled to bring the action for the benefit of the other stockholders, except as to claims arising out of the Kitzer loans. Clearly, since he participated in or ratified those loans, he is barred from bringing a derivative action for claims arising out of those transactions or loans (*Schipper v. Block & Kuhl Co.*

(1936), 283 Ill. App. 486; *Wallach v. Billings* (1917), 227 Ill. 218, 115 N.E. 382, *cert. denied,* 244 U.S. 659, 61 L. Ed. 1376, 37 S. Ct. 745; *Russell v. Louis Melind Co.* (1947), 331 Ill. App. 182, 72 N.E.2d 869; 13 Fletcher Cyclopedia of Corporations § 5862 (1970)), unless the loans were illegal (13 Fletcher, Cyclopedia of Corporations § 5862 (1970)), or unless certain of the loans occurred after he left the bank. While participation or acquiescence is a defense, a stockholder's participation in particular wrongs or irregularities will not bar him from maintaining a derivative suit for subsequent transactions in which he did not participate. 19 Am. Jur. 2d *Corporations* § 552 (1965); 13 Fletcher, Cyclopedia of Corporations § 5862 (1970); *Goldman v. Jameson* (1973), 290 Ala. 160, 275 So. 2d 108.

## II.

Even if Jerome had an improper motive for bringing the action, this does not, *per se,* destroy his right to bring the suit since he is not bringing it on behalf of a business competitor. (*Johnson v. King-Richardson Co.* (1st Cir. 1930), 36 F.2d 675; 13 Fletcher, Cyclopedia of Corporations § 5877 (1970); 19 Am. Jur. 2d *Corporations* § 529 (1965).) Likewise in indicating that he was willing to settle or abandon the action Jerome was doing no more than he was legally entitled to do since no stockholder had intervened in the action. *Johnson v. King-Richardson Co.* (1st Cir. 1930), 36 F. 2d 675.[2]

## III.

While it seems clear that Jerome was guilty of "unclean hands" in his dealings with the other stockholders while he was a director, that is not necessarily a bar to the suit. For the doctrine of "unclean hands" to be applicable, the misconduct, fraud or bad faith complained of must have been toward the defendant raising the claim of "unclean hands." (*Illinois Power Co. v. Lathan* (1973), 15 Ill. App. 3d 156, 303 N.E.2d 448.) There has been no suggestion, nor could there be, that Jerome was in some way guilty of inequitable conduct directed toward the individual defendants. And it is obvious that misconduct toward the bank, which is the real plaintiff in interest (*Patient Care Services, S.C. v. Segal* (1975), 32 Ill. App. 3d 1021, 337 N.E.2d 471, *appeal denied,* 61 Ill. 2d 602), cannot be used by the individual defendants against whom the misconduct was not directed to raise the defense of unclean hands. Had the bank any good faith objection to Jerome as a nominal plaintiff, we would expect it to take over the actions.

---

[2] The stockholders' remedy in Illinois is to intervene in the action once they have noticed their interests are not being protected. *Shlensky v. South Parkway Building Corp.* (1962), 44 Ill. App. 2d 135, 194 N.E.2d 35; *Duncan v. National Tea Co.* (1957), 14 Ill. App. 2d 280, 144 N.E.2d 771.

## IV.

Nevertheless, while we hold that technically Jerome may have been a proper party to bring the action save as to the Kitzer loan transactions, we also hold that the trial court did not abuse its discretion in ruling that under the totality of the unique circumstances present in the case at bar some other party should have brought the action. A court of chancery is a court of conscience and is governed mainly by considerations of right and justice between the parties. (7 Ill. L. & Prac. *Chancery* § 99 (1954).) Here it would appear that the plaintiff who brings this suit on behalf of the shareholders should actually be one of the defendants in that suit. His disregard of the stockholders' interest has been suggested by his willingness to abandon their interests if his private wrongs were remedied. It is also evident that one of the major claims against the defendants cannot be pursued on behalf of the stockholders in this suit if Jerome is the plaintiff since he participated in the transactions giving rise to that claim. Because of all these factors, but particularly because of the glaring conflict of interests between Jerome and the parties he supposedly represents, we agree with the trial court that Jerome should not be allowed to represent the shareholders in this action.

## V.

■■ We determine, however, that the trial court abused its discretion in failing to condition its granting of the defendant's motion to dismiss Jerome's derivative claim upon giving of notice to the other stockholders of record at the time of dismissal of the action of the nature of the claim against the directors, the pending dismissal of the suit, and of their right to intervene should they wish, even though the court itself recognized that such notice was desirable. If we hold that a shareholder's derivative suit is a class action within the meaning of section 52.1 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 52.1; *Minarik v. Commonwealth Edison Co.* (1957), 12 Ill. App. 2d 410, 139 N.E.2d 854), then notice was required by that statute. We cannot agree with the defendants that the ruling in *Minarik* that the statute was inapplicable because the initial action was dismissed without prejudice should be controlling here. In *Minarik*, the initial complaint was dismissed by the initial plaintiff three weeks after it was filed. Another stockholder tried to vacate the dismissal and intervene less than two weeks after the dismissal. As the court specifically found, there was no prejudice to the second stockholder.

· Such is not the situation here. The initial suit was filed in 1970. Seven years have elapsed since then and there now could be questions of laches which did not exist when the suit was filed. More importantly, one of the defendants has died and there is no indication that the other stockholders have filed claims against his estate. Accordingly, the other stockholders

will be prejudiced if they are not given full notice and an opportunity to intervene.

But even if section 52.1 of the Civil Practice Act is not applicable since normally in Illinois rules applicable to class actions are not applicable to stockholder's derivative actions, the trial court still had the power to condition the dismissal upon the requirement that notice and an opportunity to intervene be given the other stockholders. The fact that such notice has not been required in the past is no reason for refusing to require it now. It is a well-established maxim in chancery that he who seeks equity must do equity. (7 Ill. L. & Prac. *Chancery* § 97 (1954).) The defendants have sought to have the plaintiff barred from bringing a suit he has the right to bring, because it would be inequitable for him to be allowed to bring it. But it would be equally inequitable to grant the defendants' motion and to summarily dismiss the action to the prejudice of innocent stockholders, especially where the individual defendants have a fiduciary duty toward those same stockholders and the suit was brought on behalf of the corporate defendant. Particularly where, as here, the corporate defendant on whose behalf the suit was brought has shown such anxiety to have the suit barred, we consider it essential that the defendants be required to give notice to all of the stockholders of record at the time of the dismissal of the action. This notice should include a comprehensive description of the claims brought against the individual defendants. It should also inform those stockholders that the action brought by Jerome is to be dismissed because of his own apparent misconduct and certain conflicts of interest, but that they, or any one of them, may intervene and continue the action if they desire. A time limit should be set within which the stockholders may intervene and if no intervention is sought within that period, then the derivative action will be dismissed without prejudice.

For the foregoing reasons the judgment of the trial court determining that count I of the complaint be dismissed is modified to require that notice be given to the other stockholders of record on the date of dismissal and that they be given an opportunity to intervene and carry on the litigation. As modified, the judgment of the trial court is affirmed.

Judgment modified and affirmed.

DIERINGER, P. J., and LINN, J., concur.